HATTIE ANDREAS, petitioner,

*v.*

WENDEL ANDREAS.

[Decided September 18th, 1917.]

1. Allowance of permanent alimony is usually about one-third of the husband's income, *including the income of the wife, but there is no fixed rule to that effect,* and the allowance does not include the amount allowed for support of the children.

2. The fact that the husband's property is largely unproductive of income should not defeat the administration of justice, and his property should be treated, for the purpose of alimony allowance, as. if it produced a fair return on the amount of investment.

3. Where a wife obtained a divorce for the cause of adultery and the husband married the guilty woman, alimony of $3,200 per annum for wife and child is not excessive, even though the husband's investments are not immediately productive of an income proportionate to his investment, and the wife has a separate estate of $11,000.

---

Exceptions to master's report on alimony.

*Messrs. Vredenburgh, Wall & Carey,* and *Mr. W. H. Carey,* of counsel, for the petitioner.

*Messrs. McCarter & English,* and *Mr. Arthur Egner,* of counsel, for the defendant.

LEWIS, V. C.

The master has reported that the sum of $3,200 a year should be decreed as alimony for the petitioner and the maintenance of the daughter of the petitioner and the defendant, the daughter being in the custody of the petitioner. The defendant excepts to the report, mainly on the ground that the allowance is excessive.

The property of the defendant consists of farm land situate at Teaneck, Bergen county, in the State of New Jersey. There are all together eighty-eight and one hundred and eighty-five thousandths acres. The tract is located adjoining lands of the estate of William Walter Phelps, and is bounded on the north by West Englewood avenue—the principal road running from the River road to the West Englewood station on the West Shore railroad—and by a tract of about sixteen acres lying west of the River road between that and the Hackensack river, included in the eighty-eight and one hundred and eighty-five thousandths acres. The land west of the River road is swampy in part—the map shows two small streams running into the Hackensack river.

At the time of the taking of the testimony a strip two hundred feet wide, containing eleven acres, running along the entire northerly side of the property, east of the River road, was owned by petitioner, but that was sold to the defendant by petitioner on July 20th of this year for the sum of $11,000, as appears by the stipulation on file.

By that sale the defendant became the owner of all the land south of West Englewood avenue, and extending along that avenue two thousand five hundred and sixty-two feet.

It is nearly all fine upland; and is about one thousand three hundred feet in width on the easterly end, and about one thousand two hundred feet in width on the westerly end.

The buildings on the property consist of (1) a large dwelling-house, with a large barn west of the River road; (2) a double-house, known as a two-family house, a barn and some small buildings on the east of the River road.

The eleven-acre tract conveyed to the defendant by the petitioner had no buildings on it, and was a strip two hundred feet

wide running the length of the property from the River road eastward, and constituted the entire frontage on West Englewood avenue.

The master finds the value of all the real estate for the purpose of this inquiry at the sum of $103,500.

The master also finds that the defendant's undisputed annual income from his personal property is $5,693. This income is derived from United States four per cent. bonds; New York City three and one-half per cent. bonds; New York Central four per cent. bonds; Michigan Central four per cent bonds, and shares of Wharf Company stock.

The master, in fixing the alimony, assumed that under the law the defendant's income from the bonds should be considered as though he received five per cent. interest, on the theory that he could, if he wished, sell the bonds and invest the money at five per cent. interest in some investment that was perfectly safe, and that if he chooses to keep his money invested in the bonds, his wife and child must not be allowed to suffer thereby.

In regard to the defendant's real estate, the master charges him with five per cent. interest on the value of it, in spite of the claim of the defendant that he is unable to sell it or to secure any income out of it, the defendant claiming that at the present time it is a burden rather than a source of income to him.

The master also finds that the defendant should be required to give security in the sum of $35,000, and that such security could be given by him without hardship or embarrassment by requiring him to deposit with the clerk of this court, or some trust company designated by this court, bonds now held by him of the par value of $30,000, and permitting payment of the interest accruing thereon to the defendant so long as the order of this court with respect to the payment of alimony shall be faithfully performed. Or, at the option of the defendant, he might be required to give to the petitioner his bond for the sum of $35,000, conditioned for the payment of alimony, pursuant to the order of this court, such bond being secured by a mortgage upon defendant's real estate with a like condition.

The master also finds that the defendant should pay the sum of $400 to the petitioner for counsel fees.

In estimating the amount of alimony to be allowed the case of *Bennett* v. *Bennett, 59 Atl. Rep. 245,* seems to sustain the master's finding that the actual rate of interest received by the husband on his personal property is not the criterion which should govern the court, but that the wife is entitled to have her alimony calculated at the legal rate of interest. The master seems to have split the difference.

The defendant does not receive one cent of profit from his real estate, and claims that this should not be considered in estimating the amount of alimony until he is able to get something out of it.

· The case of *Boyce* v. *Boyce, 27 N. J. Eq. 433,* decided that the alimony is to be fixed at what the wife would have the right to expect as support if living with her husband. Of course, a husband is required to support his wife and children in a manner suitable to his means and ability, and a woman who is living happily with her husband is not very apt to go to court to secure a more liberal maintenance, simply because her husband is holding his real estate for speculative purposes and neglecting to farm or rent it. However, a wife who has been greatly wronged by her husband,. and who has been compelled to secure a divorce from him on the ground of adultery, as is the fact in this case, stands in a vastly different position. It would be impolitic and unfair to allow the husband to get off lightly under such circumstances. He is now married to the lady who caused the trouble. However, under the case of *Hall* v. *Hall, Dock. 31, 703,* April 13th, 1910, it was held that excessive alimony cannot be awarded by way of punitive damages, to penalize the defendant for his extreme cruelty to the wife.

Although there is no matter-of-course rule, the allowance for permanent alimony is usually about one-third of the husband's income for the wife's own support, but this one-third should not include the amount which may be fixed for the support of the offspring.

The defendant contends that the master erred in considering the real estate owned by the defendant, upon the present application, and in basing his estimate of alimony in part upon the value of the real estate, urging that only when the real estate is

sold and the defendant's estate thus increased, can it be an element to be considered in the alimony. He also contends that it is a great injustice to him that he should be charged with five per cent. interest on the value of his real estate, when, he says, it is not only most apparent that he is unable to sell his real estate, but also that he is unable to secure any income out of it, so that at the present time it is a burden rather than a source of income to him.

The question then simmers down to this simple proposition: the defendant's real estate is very valuable; he states before the master that he is willing to sell it for $71,000; whether he would do so or not has not been tested; the master places the value at $103,000; the three real estate experts produced by the wife place a very much higher valuation on the real estate than does the master, that is to say, between $5,000 and $10,000 higher than the master's estimate. The only real estate expert produced by the defendant fixed the value of the real estate at $77,100. The defendant does not reap one cent of profit from this large tract of land and the buildings thereon; as I have said already, it is admittedly very valuable, and he apparently is not willing to sell it until he can get a high price. It seems to me, under these circumstances, that the language of Vice-Chancellor Dodd, in the case of *Close* v. *Close, 25 N. J. Eq. 436,* is applicable to this case:

"The only difficulty I have had in fixing upon a sum of permanent alimony grows out of the condition and character of his estate. But I am satisfied that the situation in which he has brought it, or designedly suffered it to be, cannot be allowed to defeat the manifest justice of the case."

In order to be not unduly oppressive the master based his estimate of the amount of alimony for the wife, and the maintenance of the child, at the price of $71,000, this being the price at which the defendant offered to sell. At five per cent. this would produce $3,550; added to this, the present income from his personal estate, $5,683, would give a total of $9,243 as the total upon which to calculate alimony.

There is another element which must be considered in estimating the amount of the alimony to be allowed, viz.:

"The wife's income is, as explained in other connections, always an element in the alimony computation. The method is to add it to her husband's, consider what under all the circumstances should be allowed her out of the aggregate, then from the sum so determined deduct her separate income; and the remainder will be the allowance to be given her. Also, any other means of support possessed by the wife will be carried into the account." *2 Bish. Mar., D. & Sep. 403.*

During the progress of the suit the petitioner received from the defendant the sum of $11,000 for a strip of land which he had formerly conveyed to her, and which she resold to him. In his report the master has charged her with interest at five per cent., so the requirements of the case have been complied with in that respect.

The master has gone into this case most thoroughly, and I do not think his report can be improved upon. To my mind it is eminently fair and just to all the parties interested.

The exceptions will be overruled.