The bill in this case charged unjustifiable abandonment and refusal to support, and the case came on for trial before Vice-Chancellor Fielder, who, on November 23d 1920, advised a decree awarding the wife $3,000 yearly alimony, payable in monthly installments; one-half of the yearly interest of a mortgage ($75); yearly dividends on certain corporate stock ($70); the rent of premises called the Nineteenth street house, Newark ($480), and the use of the homestead (Vernon Terrace); the husband to pay the *Page 54 
yearly fixed charges of the two houses, approximately, $500; the wife to keep them in repair. The alimony totals $3,975, plus the use of the homestead. This somewhat unusual decree was, evidently, agreed upon by the litigants, because it bears the consent of their counsel.
The husband took upon himself to repair the houses, claiming that his wife neglected them, and to reimburse himself collected the rent of the Ninteenth street house, and took the balance out of the alimony In 1924, he was ordered to show cause why he should not be adjudged in contempt and why the allowance of the wife should not be increased. In an answering affidavit he admitted disregarding the decree in the manner just related and asked to be excused, and that his course be approved and his expenditures be allowed; and further, that the yearly alimony be reduced to $2,400. The matter was referred to a master to investigate the husband's capacity and the wife's needs and to report on the applications for increase and decrease of the alimony, and also to take an accounting. The master recommended that the alimony be increased to $5,700 annually, and that the decree be modified relieving the defendant of the future payments of the fixed annual charges of the homestead and the Nineteenth street property ($500), and that he thence have the rent of the Ninteenth street property ($960); he to make the repairs on the latter. On the accounting the master reported that the defendant was —
In arrears for alimony .................. $1,017.50
And that of the $1,280 rent collected by
 him from the Nineteenth street house,
 the wife was entitled at the rate of
 $40 a month ........................... 640.00
 _________ $1,657.50
The master reported that the defendant
 expended for repairs .................. $2,323.50
That of this amount he should not be
 allowed for $540 for a furnace and
 $294.46 for electric appliances
 installed in the Nineteenth street
 house, because they were capital
 improvements not repairs .............. 834.46
 _________ $1,489.04
 _________
Balance due for alimony, March, 1925 .... $168.46
 *Page 55 
Exceptions were filed by the defendant to the increase in alimony and to the failure to give credit for the capital improvements, and were disposed of orally at the conclusion of the argument, the proofs having been previously submitted.
The decree was modified in accordance with the master's recommendation except as to the accounting, which was corrected in this manner:
Arrearage of alimony .................... $1,017.50
The wife was allowed all the rents
 collected from the Nineteenth street
 house after the repairs were made, as
 she was charged with repairs resulting
 in the increased rent ................. 1,280.00
 _________ $2,297.50
Expenditures for repairs ................ $2,323.50
The cost of capital improvement,
 furnace ..................... $540.00
Electrical appliances ......... 294.44
 ________
 $834.46
Was divided proportionately per
 use, based on the life of the
 improvement, estimated at ten
 years, and the complainant was
 charged with ................. 150.00
 _________ 684.46
 _________ 1,639.04
 _________
The decree entered for arrearages, viz. ............. $658.46

Both sides desired a modification of the decree eliminating all matters except a straight money allowance. The reasons for the provisions in the decree, which lead to the present complications, had been removed. At the time it was entered the husband claimed to own the mortgage mentioned in the decree, which stood in his and his wife's name, and also the Vernon Terrace house, to which she held title. She claimed to own the Nineteenth street house, which stood in the husband's name. InEpiscopal Church v. Hebble, 95 N.J. Eq. 117, a moiety of the mortgage was given to each and the Vernon Terrace house to the wife. In another suit, as I am informed, the husband succeeded as to the Nineteenth street property. *Page 56 
At the time of the original decree the defendant's salary was $10,000 annually. For the past three or four years it has been $15,000. One-third of the husband's income is usually allowed the wife for alimony, and an additional allowance for the support of children. This, of course, is only a guide and not a hard and fast rule. Each case must be separately judged according to the circumstances, which is often a trying task. I felt at the time of the decision, as I do now, that the sum recommended by the master was reasonable and just to the wife. In addition to the upkeep of her home, and supporting and clothing herself, the wife maintains her youngest son at Princeton at a yearly cost of $1,500, which the husband does not criticise, and the needs of another, older, son, now an adult, but not as yet fully self-sustaining, are not overlooked by her. Last year her expenses were, so she testified, $5,200, and it is not shown that she was not careful. She had to use the money received from the Board of Mission's mortgage. The defendant claims that the homestead is too large for her use, and contends that she should rent it and seek smaller quarters. The answer to this is that she is living in the home he provided, and only in the style and manner that she would be living if he were living with her, and to that she is entitled. His income and their station in life justifies her conduct. She is not called upon to cheapen her course of living unless his means require it, and that they do not. Her right to her mode of living fluctuates with his earning capacity and style of living, and it does not appear that he is denying himself the luxuries of a gentleman's existence. It may be the fact that the wife's expenses are now nearly as much as when the two were living together, but that should not deprive her of the comforts of the home he created, which he can afford, and which she offers to share with him, but which he declines.
The defendant also claims that his wife ought to compel his adult son to pay board "for his own good." The young man is, it would appear, striving for a foothold in business, and is it to be held against the mother that she is encouraging him in his struggle by feeding and housing him? The defendant-father offers him no assistance. *Page 57 
The exception to the master's report, that it does not provide for a reduction of the allowance to the amount of the son's keep at Princeton upon his graduation, is premature. The time to apply for that is upon the happening of the event.
Further explaining the correction in the accounting: The master refused to allow the defendant credit for two items — furnace and electrical appliances in the Nineteenth street house — holding that they were improvements, not repairs. Under the amended decree the defendant resumes ownership of this property. The allowance should have been made for the time the articles were used by the complainant as that time of the estimated life of the articles bears to the cost. The estimated life of ten years is low, and the amount allowed favors the defendant.
Until the defendant made the repairs on the Nineteenth street property, it yielded but $40, as against $80 thereafter. The master thought that the complainant was not entitled to the increase, and charged the defendant with but $640 of the $1,280 rent collected by him. She paid for the improvement and was entitled to the resulting benefit. The error was palpable and conceded by the defendant.