34 N.J. Super. 313 (1955)
112 A.2d 278
LORRAINE TURI, PLAINTIFF-RESPONDENT,
v.
AMEDEO EDWARD TURI, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1955.
Decided March 11, 1955.
*316 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John R. Rose argued the cause for appellant (Messrs. Lum, Fairlie & Foster, attorneys).
Mr. Benjamin Shanefield argued the cause for respondent (Messrs. Braff & Litvak, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a separate maintenance judgment awarding his wife $30 a week support, costs of suit and a counsel fee of $400 in addition to the fee allowed pendente lite. The judgment reserved to *317 plaintiff the right to apply to the court for the payment of any unusual medical, hospital and dental bills.
The parties were married in May 1950. There are no children of the marriage. The complaint charges defendant with abandoning plaintiff on December 26, 1952 and refusing and neglecting properly to maintain and provide for her since that date. Defendant answered denying these allegations, and by way of counterclaim sued for divorce on the ground of extreme cruelty.
Plaintiff applied for support and counsel fee pendente lite. The court allowed her $25 a week, a counsel fee of $250, and costs of the application to be taxed, including the $60 deposit required by R.R. 4:98-1(b), then Rule 3:87-4(d). Plaintiff was unemployed at the time of the award. No appeal was taken from the pendente lite order and defendant proceeded to pay the weekly support money and allowances without protest.
At the final hearing defendant withdrew his counterclaim and admitted abandonment. Testimony was taken on the question of support. On October 21, 1954 the court entered the final judgment here on appeal.
Plaintiff was employed at the time of final hearing. Her weekly gross pay was $50, and the net "take home" pay $41.83. She was under constant doctor's attention for a female disorder, with surgical intervention indicated. (At the oral argument it was revealed that plaintiff had since undergone such an operation and that defendant had paid for it.)
Following their marriage the parties had gone to live with plaintiff's parents. Defendant's grandfather then arranged to have the parties occupy an apartment rent-free in an apartment house owned by his realty company. They lived there until the separation. Soon after defendant's departure the company demanded possession of the apartment. Plaintiff then moved in with her parents. From her testimony it appears that of her $66.83 weekly income  $41.83 net earnings and the $25 paid her by defendant  she had *318 the following expenses, calculated on a weekly basis: $20 board paid to her parents; $7.50 doctor bills; $4 for drugs; $5 currently being paid on two loans incurred for lawyer's services and moving; $4 for dog food; $10 for clothes; and miscellaneous expenditures for bus fares, lunches and the like. Except for the latter minor items, these expenses total $50.50 a week.
Since leaving his wife defendant has lived in his parents' home where his grandfather also resides. He pays no rent or board. His father is a physician and his grandfather is in the construction business. For some time past defendant has been an employee of this construction company, first as a mason's helper and latterly as a journeyman mason, earning $3.75 an hour. The normal work week is 35 hours. A payroll record introduced in evidence shows that for 17 weeks preceding the hearing defendant earned a total of $1,313.89 net after deductions, or an average net weekly "take home" pay of $77.28. He did not work for two weeks during this period, allegedly because no work was available. There was some testimony that in addition to his wages he received $10 and sometimes $15 for "expenses." Defendant claims this was to reimburse him for gasoline used in transporting co-workers from job to job, and for beer or coffee he treated them to at the direction of the company.
Plaintiff testified that defendant owned an automobile worth $1,500; that his mother had said he had about $25,000 in government bonds and a $10,000 endowment policy payable at age 25; and that defendant had once told her his grandfather had set up a $25,000 trust fund for him which would be his at 25. Defendant admitted he owned a recently purchased automobile but denied the existence of any government bonds  the few he had were turned in to pay his attorneys and to make the weekly pendente lite support payments. He also denied the existence of any endowment policy or trust fund. We do not have the testimony of defendant's mother and grandfather; it would have been helpful in determining just where the truth lay.
*319 Defendant also testified that some time previously his father had "loaned" him $25 a week "on a few occasions," with the understanding that this money was to be repaid. There were two other outstanding loans: $1,000 owed on his car and a recent $1,400 loan from his father, on each of which he was paying $20 a week.
Plaintiff's counsel placed considerable stress in his examination of the two main witnesses and in argument to the trial court upon the fact that defendant's father was a well-to-do physician and the grandfather a wealthy man; that defendant was a "millionaire's son who works not because he has to but because it is the thing to do" and was living in the lap of luxury; that having "walked out" on plaintiff, defendant should be made to pay for doing so. The trial court properly observed that plaintiff's needs and defendant's income were the only considerations; the fact that his parents or grandfather might be wealthy was of little moment. In its oral decision, the court noted defendant's average net weekly earnings and detailed plaintiff's needs, which it apparently accepted as reasonable except for the $4 a week for dog food, a sum considered excessive. It then allowed plaintiff $30 a week support, reserving to her the right to apply to the court for any unusual medical expenses.
Defendant argues that the $30 allowance results in his wife enjoying an income of $71.83, a sum far in excess of what remains for his own needs after making the support payment. He also claims that plaintiff's employment in the period between the pendente lite award and final hearing constitutes a change in circumstances requiring a reduction in the preliminary $25 weekly award; that the trial court erred in computing his average weekly net salary by limiting the number of weeks considered to the peak period of the seasonal trade; and that in view of defendant's admission of abandonment, the court should have ruled out all testimony not touching on plaintiff's financial needs and defendant's ability to provide  the reference here being to *320 any testimony and argument relating to defendant's parents and grandfather.
Taking the last point first, the court clearly ruled out any consideration of the status of defendant's parents and grandfather. The other contentions go directly to a consideration of the principles which should obtain in a review of a separate maintenance award.
The duty of a husband to provide suitable support and maintenance for his wife has long been recognized and enforced in this State. This duty is his primary obligation and arises out of the status of wedlock by reason of public policy recognized and enforced by civil and common law, and by the legislation incorporated in N.J.S. 2A:34-23 and 24 (formerly N.J.S.A. 2:50-37 and 39). Sobel v. Sobel, 99 N.J. Eq. 376, 378-379 (E. & A. 1926); Bonanno v. Bonanno, 4 N.J. 268, 273 (1950). Such common law obligation to support the wife continues during the existence of the marital relationship.
N.J.S. 2A:34-23 provides:
"Pending any matrimonial action brought in this state or elsewhere, or after judgment of divorce or maintenance, whether obtained in this state or elsewhere, the court may make such order as to the alimony or maintenance of the wife, * * * as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, * * *."
And N.J.S. 2A:34-24 states that:
"If a husband, without justifiable cause, shall abandon his wife or separate himself from her and refuse or neglect to maintain and provide for her, the court may order suitable support and maintenance to be paid and provided by the husband for the wife * * *, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper. * * *"
N.J.S. 2A:34-23 and 24 are cognate. Duffy v. Duffy, 19 N.J. Misc. 332, 334, 19 A.2d 236 (Ch. 1941).
These statutory grants are comprehensive and leave much to judicial discretion in fixing the amount of the support *321 award. As was early observed by Chancellor Pennington in Richmond v. Richmond, 2 N.J. Eq. 90, 92 (Ch. 1838), it is impossible to frame a fixed, general rule for allowances of this character which would work justly in all cases; every case must depend very much on its own peculiar circumstances.
In Dietrick v. Dietrick, 88 N.J. Eq. 560, 561 (E. & A. 1918), the court, after noting that the continuing duty of support which the husband owes his wife is one of which he may not absolve himself by his own misconduct, ventured the following oft-quoted statement of the general rule which should apply in determining a support award:
"* * * The amount is not fixed solely with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the husband's actual means. There should be taken into account the physical condition and social position of the parties, the husband's property and income (including what he could derive from personal attention to business), and also the separate property and income of the wife. Considering all these, and any other factors bearing upon the question, the sum is to be fixed at what the wife would have the right to expect as support, if living with her husband."
It may be noted, in passing, that the observation made in Dietrick that the amount allowed the wife is "usually about one-third of the husband's income"  see Hebble v. Hebble, 99 N.J. Eq. 53, 56 (Ch. 1926), affirmed Ibid. 99 N.J. Eq. 885 (E. & A. 1926), and Andreas v. Andreas, 88 N.J. Eq. 130, 133 (Ch. 1917), for a similar statement  has lost any significance it may have had in view of changing economic and social conditions. The one-third standard has never been more than a guide, and has been referred to as "not a rule, even in a loose sense." O'Neill v. O'Neill, 18 N.J. Misc. 82, 93, 11 A.2d 128 (Ch. 1939), affirmed 127 N.J. Eq. 278 (E. & A. 1940). This criticism is justified in view of the provisions of N.J.S. 2A:34-23 and 24, whose language has been followed by our highest courts. As observed in the O'Neill case, to follow the one-third rule would result in the total obliteration and undiscriminating exclusion of the many other factors that should be considered *322 and which have more or less importance, depending on the circumstances of particular cases.
It has been said that the separate maintenance to which a wife may be entitled is a sufficient allowance to enable her to live according to the scale to which she was accustomed, with proper regard to the husband's means. Armour v. Armour, 135 N.J. Eq. 47, 53 (E. & A. 1944). The proper support of the wife is the distinct objective, and she has no right to receive more from the husband. O'Neill v. O'Neill, above, 18 N.J. Misc. 82, 86. In Bonanno v. Bonanno, 4 N.J. 268, 273 (1950), it was said that the general rule is that the amount of support should be suitable to the circumstances of the parties.
The fact that the husband is the offending party should have no meaning or implication affecting the amount of support to be allowed by the court in a maintenance action. The right to support should not be used as an instrument to punish a husband who is guilty in the matrimonial relation.
Liberality by a court, acting under a grant of judicial discretion, has no place in an order or judgment for the payment of money in a maintenance action. The judicial discretion to be exercised by the court cannot be manifestly unreasonable action: it cannot be any ruling which effects injustice; it cannot be clearly contrary to reason and evidence, and it cannot be the whim or caprice of the judge, or his arbitrary will. O'Neill v. O'Neill, above.
Former Advisory Master Herr, in his work Marriage, Divorce and Separation (2d ed. 1950) (10 New Jersey Practice), § 430, pp. 421-430, has comprehensively enumerated some of the factors which have been considered by courts in fixing the amount of support to be paid by the husband, without suggesting that other elements might not be taken into account in certain cases. Some of these factors are: (1) the interest of the State, society, and the community where the wife resides; (2) the wife should not be enriched nor the husband penalized; (3) the husband's property and income  and here the court may also consider his capacity *323 to earn money through personal attention to his business; (4) the bona fide indebtedness of the husband; (5) the actual needs of the wife, although her wants are not the sole criterion; (6) the wife's age, condition of health and ability to earn support; (7) her separate property and income; (8) the sum she would have a right to expect had she and her husband continued to live together; (9) income tax; (10) the amount should be so limited as not to render separation attractive to the wife, and yet not so meagre as to make cohabitation a necessity. These, and other factors, find their reflection in the adjudicated cases in this State cited to the text by Herr, op. cit., pp. 421-430, and 1954 Supp., pp. 67-70.
In reviewing the support award before us we have carefully weighed all the mentioned elements, the fact that defendant is living with his parents, and the minor miscellaneous expenses plaintiff might incur. The $25 pendente lite award was made at a time when plaintiff was not working. She now enjoys $41.83 net weekly income from her own efforts. It would appear that $60 is the maximum amount presently required by plaintiff to meet her reasonable needs. The amount of support will be reduced from $30 to $20 per week.
Should the wife become unemployed, whether voluntarily or not, she may apply to the court for a possible revision of the support order. In the meantime she is gainfully employed, and this must be given due consideration in any estimation of support. It may be that her continued employment benefits the husband monetarily, but as was observed in the O'Neill case, this also benefits the wife in more ways than one, and also benefits society. Self-support, whether of men or women, is to be encouraged. While the most important factors in estimating support are monetary, there are others less tangible and which must not be lost sight of, including the interest of the state and society in matrimonial litigation.
Defendant further contends that the counsel fee allowed plaintiff's attorney was excessive. R.R. 4:55-7(a), *324 formerly Rule 3:54-7(a), authorizes the court in its discretion to make an allowance of counsel fees in a matrimonial action. The pendente lite order set a preliminary counsel fee of $250 plus costs. Since the order was never challenged, we do not pass upon the reasonableness of that fee except to observe that it exceeds the amount usually allowed on a preliminary application in a case like this.
Plaintiff's application at final hearing had been for an additional fee of $1,000, counsel representing that he had interviewed many witnesses and spent much time in preparing for trial because of defendant's denial of abandonment and the filing of the counterclaim for divorce. It was only at the opening of the final hearing that he learned abandonment was admitted and the counterclaim withdrawn. In opposing an allowance of $1,000, defendant conceded that plaintiff's attorney had done considerable work and stated that a counsel fee of $350 would be adequate compensation for the work done. The $400 award followed.
At the argument before us counsel for defendant sought to explain his statement by saying he had meant that $350 would be sufficient to compensate plaintiff's counsel for his work in the entire case. If such was his intention, he did not clearly convey it to the trial judge because the statement was made after opposing counsel had expressly requested a fee of $1,000 "at final hearing."
Undue liberality in the award of counsel fees is not to be encouraged. Allowances should be measured in terms of the economic condition of the parties, the complexity and difficulty of the issues to be determined, time spent in preparing the case, the number of court appearances and the time spent in court on motions, allowances pendente lite and final hearing, and the standing and experience of counsel. The trial of this action took only 3 1/2 hours and there was apparently only one other court appearance, and this in connection with the pendente lite order which involved the preparation by defendant's counsel of three rather short answering affidavits. On the subject of what is a reasonable counsel *325 fee to be allowed at final hearing, see Cole v. Cole, 30 N.J. Super. 433, 439 (Ch. Div. 1954), and the cases there cited.
The counsel fee allowed at final hearing will be reduced to $350, the amount which defendant's counsel conceded would be adequate.
The final judgment will be modified to provide that defendant pay plaintiff the sum of $20 each week for her support and maintenance, and the sum of $350 counsel fee in addition to the fee paid pendente lite, together with costs of suit to be taxed. Defendant shall also pay plaintiff for any unusual medical, hospital and dental costs, as provided in the judgment under review. As so modified, the final judgment is affirmed.
Plaintiff applies to this court for an allowance of costs, printing expenses and a $500 counsel fee on this appeal. The printing bill and a counsel fee of $250 will be allowed.