73 N.J. Super. 373 (1962)
180 A.2d 151
CLAIRE M. SALVATORE, PLAINTIFF-APPELLANT,
v.
PHILIP R. SALVATORE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1962.
Decided April 3, 1962.
*375 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Donald A. Robinson argued the cause for appellant (Messrs. Shanley & Fisher, attorneys).
Mr. Marius Grosso argued the cause for respondent (Messrs. Grosso, Beck & Mangino, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal by plaintiff from a Chancery Division judgment entered in her separate maintenance action awarding her $175 a week for her support and maintenance and $50 a week for the support and maintenance of Carmen, the infant son of the marriage, of whom she was given permanent custody subject to defendant's visitation rights. These awards were to be effective on and after June 28, 1961, the date of the trial court's oral opinion. Defendant was to pay his wife and son's medical and dental expenses. The judgment further directed that he pay plaintiff's attorneys $697.89 for their disbursements and $4,360 as a reasonable counsel fee, based on a calculation of $5,215 less a credit of $855. Defendant's counterclaim for an accounting and judgment thereon was dismissed on the ground that he had failed to sustain his burden of proof in respect thereto.
*376 Plaintiff contends that the award for support and maintenance is inadequate, it should have been made retroactive to the date of abandonment, and a counsel fee of $10,000 allowed.
Defendant does not question the correctness of the trial court's determination that he had abandoned plaintiff and she therefore was entitled to support and maintenance for herself and the son. Nor does he challenge the dismissal of his counterclaim.
Defendant had been giving his wife $250 a week before abandoning her on November 1, 1957. He admits that in addition he paid for some 15 or 16 items, estimated by the trial judge as totalling $3,500 a year. These included the repair and maintenance of the marital home; household appliances, furniture and repairs; some of plaintiff's clothing; clothing, camp and incidentals for the boy; family vacations and entertainment; the telephone, and the gardener. Plaintiff testified that defendant from time to time also gave her expensive gifts, such as mink stoles, a diamond ring and diamond wristwatch, as well as cash gifts. The record leaves us with the indelible impression that for many years preceding the abandonment the family enjoyed a far above average standard of living. After leaving the marital home defendant gave his wife only $138 a week and stopped paying for the other items we have mentioned.
Plaintiff is over 50 years old, in poor health and apparently unable to work or support herself and her son. Defendant is several years younger. He is the most active partner in and the executive manager of C. Salvatore & Sons, a million dollar building construction business, and holds a substantial interest therein. The value of that interest and his actual wealth could not accurately be determined because he disclaimed having any specific knowledge about the partnership finances or his own money affairs. Throughout his pretrial depositions and his testimony he made repeated protestations of ignorance *377 about his financial affairs, referring the questioner to his accountant, Gardner, for more specific information. Gardner, a long-time friend of defendant, and his accountant without fee for some 20 years, apparently had absolute control of the books and records of the partnership. The testimony indicated that these records might not be entirely accurate, but that aside, inspection of the partnership books by one Dwyer, a thoroughly qualified public accountant and former Internal Revenue agent, led him to conclude that the books did not accurately and truly reflect defendant's income. When Dwyer asked for records which would show that income, none was produced. He could not determine defendant's interest in joint construction ventures undertaken by the partnership with other companies, nor could he determine his net worth.
Although the partnership books showed a balance of $66,230.55 in defendant's drawing account at the end of 1957, the records failed to reveal that he actually received any money. Nor does it appear that he received any money from the balance of his capital account for that year, amounting to $77,750.99. Defendant's 1958 drawing account was charged with payments of $45,037.17 made on his behalf, and the balance available to him at the end of the year was $31,420.06. In his capital account he received $39,485.61 as his share of profits; the balance at the end of 1958 was $77,952.65. As in 1957, there is no record of his ever receiving any money from these two accounts in 1958. The drawing account at the close of 1959 showed a balance of $54,674.81 which defendant did not use. The balance in his capital account increased to $132,627.43, more than that of any partner.
It was Dwyer's opinion, based on his examination of the books, that defendant, who in 1958 and 1959 did not receive any substantial sum from the partnership  even to reimburse him for his expenses in the firm  was getting his money from an undisclosed source. Defendant's spending habits and level of living soundly support that conclusion. *378 Although the tax returns which Gardner prepared for defendant would indicate that his income averaged $28,563.68 after taxes in the period from 1956 through 1960, it is clear beyond peradventure that he lived on a much more expensive scale. He always dealt in cash, and had no record of his personal expenses. One known expense, however, is his complete support of a Patricia Campion, with whom he became acquainted in 1955. His intimate relation with her continued up to and through the time he abandoned plaintiff, and persisted until the very time of the hearings. He paid all her expenses, moved her from New York City to an apartment in New Jersey, wined and dined her, bought her clothes and a Thunderbird car, and took her on trips. It is clear that Miss Campion had no other visible source of substantial income than defendant. It is she who undoubtedly brought an end to what seems to have been a happy marriage.
We have carefully considered plaintiff's needs, defendant's means, their standard of living before the abandonment, and all the elements which should enter into a determination of separate maintenance, as detailed in Turi v. Turi, 34 N.J. Super. 313, 322-323 (App. Div. 1955), where we reviewed the authorities. Although the trial judge made particular mention of what was said in that case as well as Bonanno v. Bonanno, 4 N.J. 268 (1950), and Martindell v. Martindell, 21 N.J. 341 (1956), and attempted to fix separate maintenance by balancing many of the elements in the proofs we have mentioned, we consider his award for plaintiff's support and maintenance to be inadequate. Under the Chancery Division judgment she will have $175 for her own needs, plus $50 for the son, a total of $225 weekly. It must be recalled that defendant had been giving her $250 a week before the abandonment, in addition to paying for the many items set out above and making cash gifts. (Since he spent little time with his family, ate out most of the time and bought his own clothes, very little of the $250 was spent on his account.) The $250 plaintiff *379 once received did not and was not meant to cover such important expenses as the repair and maintenance of the marital home where she continues to reside.
Defendant claims that the partnership income has been and will continue to be impaired because of a certain indictment brought against the partnership and those with whom it was associated in a particular joint venture. There was a judgment of conviction. He asserts that the cost of defending that case was extraordinarily great, as will be the appeal now pending. That this is so has not been demonstrated to our satisfaction; we have nothing more than defendant's bare assertion. The partnership apparently still continues to enjoy a large income. But more than that, we conclude on the basis of defendant's unsatisfactory demonstration of his income and expenses, as well as the testimony of plaintiff's expert, that the records do not begin to indicate what sums are available to him, and that defendant is well able to meet not only the amount awarded by the Chancery Division judge but more.
A wife is not to be required to change her mode of living merely because the husband has quit the marital home. She is not called upon to cheapen her standard of life unless his means require it. Gross v. Gross, 22 N.J. Super. 407, 413 (App. Div. 1952), quoting from Hebble v. Hebble, 99 N.J. Eq. 53, 56 (Ch. 1926), affirmed on opinion 99 N.J. Eq. 885 (E. & A. 1926). The proofs convince us that defendant's income, both present and prospective, his interest in the partnership and his other assets, are such that he should be called upon to support his wife in the same manner as she would have a right to expect were he still living with her. In so concluding, we also have in mind that defendant willingly undertook the expenses of maintaining another household. As we said in Mowery v. Mowery, 38 N.J. Super. 92, 105 (1955), "we cannot ignore the fact that he managed to soften the asperities of life * * * by indulging himself with a *380 paramour. He does not come before this court with good grace."
We take particular note that the trial judge, in fixing the amount of support and maintenance to be paid plaintiff, did not take into consideration the impact of income taxes upon what plaintiff will receive. Under section 71(a) (3) of the Internal Revenue Code of 1954, as amended, the gross income of a wife legally separated from her husband under a judgment of separate maintenance, includes, for purposes of calculating income tax, the periodic payments received from her husband under the judgment. And see section 71(a)(1); Boettiger v. Comm'r of Internal Revenue, 31 T.C. 477 (1958). On the other hand, he is allowed by way of deduction any amounts includable under section 71 in the gross income of his wife. Ibid., § 215(a). Plaintiff would receive $175 a week, or $9,100 a year, under the Chancery Division judgment, for her own support and maintenance. Giving her the benefit of the standard deduction (10% or $910) and considering her the head of the household because she has with her an unmarried child, her $8,190 falls within the $8,000-$10,000 tax bracket. As best as we can calculate, she will pay $1,820 on the first $8,000, plus 30% on the remaining $190 ($57), or $1,877. This reduces to $36.10 on a weekly basis. Thus, plaintiff will have the enjoyment of only $138.90. We find this amount disproportionately small compared to her needs and the standard of living she formerly enjoyed.
The maintenance award should be increased so that plaintiff will receive $175 a week net after taxes. Defendant should also be ordered to pay for the following items of expense connected with the home: the repair, maintenance and upkeep of the property, held by the entireties, as well as property insurance, taxes and utilities. In addition, he will, of course, pay for the medical and dental expenses, as directed by the judgment, as well as for the support and maintenance of his son Carmen at the rate of $50 a week.
Plaintiff claims that the support and maintenance *381 award should have been made retroactive to the date of defendant's abandonment. It is clear that whether an award shall be retroactive lies wholly within the discretion of the trial judge. Christiansen v. Christiansen, 46 N.J. Super. 101, 110 (App. Div. 1957). We will not disturb the judgment in this respect. Plaintiff was receiving $138 a week after defendant left her on November 1, 1957. In March 1958 she withdrew $12,000 from a joint bank account maintained by the parties and deposited the money in her own name in another bank. She was thus not without sufficient funds to maintain herself in the period intervening between the abandonment and the determination of the action.
We deal, finally, with the claim that the counsel fee awarded by the trial court was inadequate. Counsel for plaintiff filed a carefully drawn and detailed affidavit classifying the services he had performed on behalf of his client. The affidavit included dates, the person or activity involved, the place where the service was rendered, and the time spent, accompanied by explanatory text. We find the services rendered were necessary and reasonable. They cover a period of about three years. Included were office conferences, 62 3/4 hours; telephone calls, 24 hours; letters, 17 hours; preparation of court papers and appearances in court, 145 hours; legal research, 22 hours; miscellaneous office work, 105 hours; miscellaneous services, 8 hours. The trial of the cause occupied 10 days, and in addition counsel made 14 court appearances. In arriving at a total counsel fee of $5,215, the trial judge allowed $10 an hour for office conferences, miscellaneous work, miscellaneous services, telephone calls and preparation of letters; $15 an hour for preparation of court papers and legal research; $40 an appearance for each of the 14 appearances; and $250 for the first trial day and $100 a day for the 9 subsequent days of trial.
The reasonableness of a fee allowed in a matrimonial action is within the trial court's discretion, R.R. *382 4:55-7(a); Schlemm v. Schlemm, 31 N.J. 557, 585 (1960). Although liberality in the award of counsel fees is not to be encouraged, we should give careful and realistic consideration to the economic conditions of the parties, the complexity and difficulty of the issues to be determined, the time spent in preparing the case, the number of court appearances and time spent in court on motions, allowances pendente lite, and the standing and experience of counsel. State v. U.S. Steel Corp., 22 N.J. 341, 360 (1956); Turi v. Turi, above, 34 N.J. Super., at page 324. Much of the work counsel was obliged to do can directly be attributed to the fact that defendant resisted plaintiff's cause at every turn. We note, for example, that although defendant in his answer admitted he left plaintiff, he emphatically denied he had refused and neglected to maintain and provide for her, but on the contrary had contributed on the average of $587.07 a week, of which $266 represented monies which plaintiff had "converted" to her own use from a joint bank account. This defense was withdrawn at the very opening of the trial, defendant's counsel stating that his client had authorized him to admit abandonment on November 1, 1957. Subsequently, after the court had taken three days' testimony, defendant was given leave to withdraw the admission of abandonment, thereby reintroducing the issue. Not only was the case "protracted" and "stubbornly contested"  to use the trial court's language  but plaintiff encountered considerable difficulty in taking the deposition of Patricia Campion, so that counsel had to apply to the court for orders requiring her to appear, produce certain records and documents, and answer certain questions.
We are of the opinion that $7,000 will more adequately compensate plaintiff's counsel for the services he rendered.
Touchett v. E Z Paintr Corp., 14 Wis.2d 479, 111 N.W.2d 419 (Sup. Ct. 1961), treats in detail the problem of awarding counsel fees. The court there noted that a *383 lawyer's working year is approximately 250 days, and that the chargeable time per day is about six hours. On this basis, counsel for plaintiff spent a total of 382 3/4 hours, or slightly more than 63 days, in the case before us  approximately one-quarter of a year's efforts. The Wisconsin court also noted that in a study of the economics of the legal profession made by the American Bar Association, 38.6% of an average lawyer's gross income went for overhead. Considered in the light of the practical observations made in Touchett, the elements considered in our cases (e.g., In re Bloomer, 37 N.J. Super. 85, 94 (App. Div. 1955)) as a basis for counsel fees, and our own careful assessment of the nature, quality and volume of the work actually involved in this case, $7,000 is not too liberal an award. Against this sum counsel should credit the $855 mentioned in the judgment under review.
Application has also been made by plaintiff's attorney for a counsel fee on this appeal. He has submitted an affidavit in which he represents that he has devoted some 96 hours to the preparation of the appendix, legal research, preparation of the brief and miscellaneous services. A counsel fee of $2,000 will be allowed, to be included in the taxed costs.
The matter is remanded to the Chancery Division for the entry of a judgment in conformity with the views expressed in this opinion.