M. LILLEY CAPODANNO, PLAINTIFF-APPELLANT, v. ROCCO T. CAPODANNO, DEFENDANT-RESPONDENT.

Argued January 12, 1971—Decided April 5, 1971.

114

*Mr. Joseph Schoenholz* argued the cause for plaintiff-appellant.

*Mr. Daniel G. Kasen* argued the cause for defendant-respondent (*Messrs. Kasen, Schnitzer & Kraemer,* attorneys; *Mr. Waldron Kraemer* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. The primary issue on this appeal is the propriety of the Chancery Division's denial of separate maintenance to the plaintiff M. Lilley Capodanno on the ground that her earnings were sufficient to meet her needs. The Appellate Division in an unreported opinion affirmed that part of the judgment of the trial court denying such relief and we granted plaintiff's petition for certification. 57 *N. J.* 134 (1970).[1]

---

[1]Among the issues contested at the trial was Mrs. Capodanno's claim for the matrimonial home or the rental value thereof. The home was owned by the parties as tenants by the entirety. The Appellate Division resolved this dispute and it is not involved in this appeal. Under the Appellate Division's decision, plaintiff will receive one-half the rental value of the home after taxes, assessments, mortgage payments (if any), insurance and capital improvements are deducted. This should result in an annual income for the wife of about $1,000.

Although the case consumed a great deal of time and the record is voluminous, the facts pertinent to this appeal are relatively simple. The Capodannos were married in 1938. At the time of the hearing Mr. Capodanno was sixty-three years old and his wife was fifty-six. They lived together in the matrimonial home in West Caldwell with their two sons, both of whom had attained majority. In October of 1964, Mrs. Capodanno left the home. At the trial Mr. Capodanno conceded that his wife was compelled to leave because of his extreme cruelty. Thus, the major issue before the trial court was the amount, if any, of separate maintenance to be awarded.

In 1956 Mrs. Capodanno began teaching school. She had had some experience in teaching during the early years of her marriage, and wished to return to the profession to regain "a measure of personal dignity" she had lost because of her husband's alleged parsimony. Mr. Capodanno gave his wife permission to teach and agreed to continue paying all household expenses and other incidentals even down to paying for his wife's lunches. His only reservation was that his wife's earnings not increase his tax burden on their joint income tax return. Mrs. Capodanno was allowed to use her earnings for clothing, vacations, various personal incidentals or for anything else she might want. During the years she was teaching and living in the marital home, she took extended tours abroad which consumed large amounts of her earnings.

The trial court found that at the time of the hearing Mrs. Capodanno's gross income from her salary was $11,675.00 and after taxes and deductions, she would have $8,864 usable income. We accept these findings. The trial court did not make any findings regarding Mr. Capodanno's income. It regarded any inquiry into his income as irrelevant since it thought that whatever his exact amount of earnings, he had ample means to meet any support order the court might make. Our examination of the record convinces us that his yearly income was in the area of $35,000. At the

conclusion of the trial, the court determined that Mrs. Capodanno was not entitled to any support from her husband because her own income was sufficient to meet her "reasonable needs." For the reasons which follow, we think the court erred.

It is well established that a husband has a common law duty to support his wife. This duty is a continuing one although strained financial circumstances may excuse a present failure to support. *Bonanno v. Bonanno,* 4 *N. J.* 268, 273 (1950). A husband must support his wife according to her needs, but "needs" are not measured merely by the amount of money necessary to maintain a wife at a level of subsistence or even reasonable comfort. A wife's "needs" will vary depending upon the case, for "needs" contemplate the amount of money necessary to maintain a wife in a manner as near commensurate as possible with her former status. *Martindell v. Martindell,* 21 *N. J.* 341, 352 (1956); *Bonanno v. Bonanno, supra* at 274; *Dietrick v. Dietrick,* 88 *N. J. Eq.* 560, 561 (E. & A. 1918). In determining a wife's needs, a court should take into account the physical condition and social position of the parties, the husband's property and income, and the wife's property and income, if any. *Dietrick v. Dietrick, supra* at 561.

In the present case, we think the trial court misconstrued what is meant by "needs." It took into account *only* the fact that the wife was able to support herself by her own means at a level of moderate comfort. It neglected to consider that she had these same means available when she lived with her husband at which time her husband maintained the home and provided for food, automobile maintenance, drugs and other expenses. Necessarily, the loss of these benefits which she must now provide for out of her own earnings has diminished her resources. As a result, she has been forced to give up her vacation trips and deplete her savings since the separation. Yet, as we have said, she is entitled to live at a standard consistent with her former pattern of living. *Dietrick v. Dietrick, supra.* While her

earnings may be sufficient to provide for her minimum needs, they are not sufficient to provide for her needs as measured by this standard.

The trial court was satisfied as are we that Mr. Capodanno can afford to pay reasonable support. He has ample means.

█ The next question to be answered is how much of an allowance Mrs. Capodanno should receive. She contends that she should be given one-third of her husband's income, see *Dietrick v. Dietrick, supra; Hebble v. Hebble,* 99 *N. J. Eq.* 53, 56 (Ch. 1925), *aff'd* 99 *N. J. Eq.* 885 (E. & A. 1926), and that her earnings should be of no concern to the court. She urges that the Married Women's Act, *N. J. S. A.* 37:2–1 *et seq.,* declares that a woman's earnings shall belong to her as if she were a single woman and that this bars us from taking her income into consideration. We see no merit to the argument. The purpose of the Married Women's Act was to secure equality for women and not special privileges. Today when women have joined the labor force in large numbers and are vying for increased independence, it would be anomalous to ignore their income in determining the proper amount for support payments. Accordingly, whatever validity the frequently mentioned one-third guide has, see *Turi v. Turi,* 34 *N. J. Super.* 313, 321–323 (App. Div. 1955), it is not at all applicable here where the wife has a substantial income of her own. This income must be a factor in our consideration.

█ On the other hand, a wife's income is not, as the defendant contends, the *sole* factor to be considered. His ability to pay, the duration of the marriage, and the age of the parties must also be considered. The extent to which the wife's earnings should be applied in diminution of her husband's obligation will depend upon all these circumstances. In dealing with the present case it must be remembered that there is a vast difference between a marriage which has lasted over a quarter of a century where the wife is now well along in years, and a case involving a marriage of short duration where the wife is still young and able

to pursue a career. See *Khalaf v. Khalaf,* 58 *N. J.* 63, (1971). In the present case Mrs. Capodanno has spent the greater part of her adult life living at home with her husband and raising a family. She took her position as a teacher only after her family responsibilities had decreased when her children had grown older. The money she earned was not contributed to or needed for the benefit of the family. It was used solely for her own benefit. This was their pattern of life and her husband agreed to it. As long as he can afford to, he should support her in her accustomed pattern now that they have separated, and she should not be obligated to work to lighten his burden. There is no difficulty regarding his ability to support her. His children are grown, and his income is more than adequate. In circumstances such as these it must be recognized that if a wife chooses to work, she is entitled to do so to protect herself against the possibility of the loss of support from her husband because of his death or other change in circumstances. *Martindell v. Martindell, supra* at 354. Although it is appropriate to give some effect to her earnings, the court should not overlook the basic concept that she may through her employment seek to protect herself against the eventualities we have mentioned.

Taking into account both Mrs. Capodanno's needs and her present means on the one hand, and her husband's resources on the other, we think that $400 per month is a fair award. This amount is necessary in the light of her present earnings to maintain her in the pattern of living to which she had become accustomed prior to the separation, and to allow her to retain reasonable savings to provide for an uncertain future. If Mrs. Capodanno's employment should terminate for any reason, she would be entitled to a greater amount of support to meet her needs because of this change in circumstances. The award is retroactive to July 8, 1965, when this action was commenced. Of course, any payments already made to the plaintiff by the defendant subsequent to that date, such as payments

under a pendente lite order, should be deducted from the amount due.

Plaintiff also made a claim for the restitution of $9,725 she paid to her husband over a period of eight years as her share of taxes on their joint income tax return. There is no dispute that she paid this amount. Mr. Capodanno maintains that the moneys were paid as part of an agreement whereby Mrs. Capodanno was permitted to work and to use her earnings in any way she chose with the understanding that her earnings would not increase his tax burden. Mrs. Capodanno contended that the moneys were exacted through threats and other means of coercion. The trial judge found that there was no coercion proved and that the agreement was reasonable under the circumstances. We agree with that finding. However, it does appear that Mrs. Capodanno overpaid her fair share of the taxes. She paid $9,725 and both parties agree that if she was obligated to contribute at all, her share was at the most $8,600 in addition to her withholding. Accordingly, we think that she is entitled to $1,125 in restitution with interest from the date of the separation.

The last question before us is the amount of counsel fees and costs to which plaintiff's attorney is entitled. The trial court awarded the sum of $2,500 in fees and $409.50 expenses. In making this award, the trial court refused to consider expenses and fees incurred in connection with nonmatrimonial matters and with counts for divorce and separate maintenance based on defendant's alleged adultery. The counts alleging adultery were withdrawn at the start of the trial. We agree with the trial court in this regard. Most of the trial dealt with nonmatrimonial issues for which no counsel fee is allowed. See R. 4:42–9(a)(1). However, we do think that $2,500 was too low an award for counsel fees in view of the considerable time and effort expended by counsel on the separate maintenance count. We think that an additional $1,000 is warranted. We will, however, not disturb the trial court's

determination regarding costs since most of the costs pertained to a matter not litigated.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for disposition in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL and SCHETTINO—5.