34 N.J. Super. 95 (1955)
111 A.2d 513
RUTH E. TESTUT, PLAINTIFF-RESPONDENT,
v.
RICHARD S. TESTUT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1955.
Decided January 28, 1955.
*96 Before Judges CLAPP, JAYNE and FRANCIS.
*97 Mr. Benjamin M. Ratner argued the cause for the respondent (Miss Elsie Rand, attorney).
Mr. Morris N. Hartman argued the cause for the appellant (Messrs. Herr & Hartman, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Defendant appeals from certain orders of the Chancery Division increasing alimony and support payments for his former wife and their three children, and denying his application for reduction of the obligation.
The wife obtained a judgment nisi for divorce on March 22, 1950. Prior to this date she and the defendant, both being represented by counsel, executed a support agreement under which the husband agreed to pay $100 weekly for that purpose. This sum was allocated $40 for the wife and $20 for each of the three children of the marriage. In addition, he agreed to pay all their extraordinary medical and dental expenses. The children were aged 12, 10 and 9 years when the divorce was granted.
The contract provided also that certain insurance policies then being carried by the husband, in which the wife was named as beneficiary, would be continued by him until the youngest child became 21 years of age. The husband was privileged, however, to change the beneficiary in the event of the wife's remarriage. It seems clear from the record that the primary and common purpose of this stipulation was to assure a college education for the children in the event of the death of Testut.
The agreement was approved by the court and incorporated in the judgment nisi.
On February 25, 1953 plaintiff sought an increase in the support allowances because of alleged change of circumstances and a hearing was had thereon at which both parties testified. The wife discussed at some length the problem she faced in taking care of and providing for her three children under the existing support order. The rent for the apartment she and the children occupied had been increased, food and clothing were more burdensome, and the *98 income tax on her share of the weekly allowance had increased somewhat. The increased expenditure for food and clothing did not arise so much from a rise in prices, although the mother did mention this. The intervening years between October 1949, when the support agreement was signed, and February 1953, when more financial assistance was sought, had brought about changes of considerable consequence in the lives, habits and needs of the children. At the time of the last hearing in November 1954, all three children were in high school. The oldest boy was then a senior and looking forward hopefully to college. At the first hearing, two were in high school and the youngest, a daughter, was to matriculate in September 1953. They were bigger and older; it was more expensive to feed them. Keeping them decently clothed was more costly. The total needs for support of plaintiff and the children were itemized at $175 weekly.
The defendant remarried eight days after the divorce judgment became final. He took up residence in Maplewood, N.J., with his new wife, and was living there with her when plaintiff's application was first presented to the court. At the time of this hearing she was expecting a child and they were planning on moving to Radnor, Pa., a suburb of Philadelphia, where Testut had purchased another home.
Consequently, defendant then owned two homes. The one in Maplewood was up for sale at an asking price of $31,000. The price of the new home was $29,500.
Testut's income had increased during the intervening years. In 1950 it was $16,700; $17,350 in 1951; $19,321 in 1952; $20,700 for 1953. His obligations had increased also, largely through the burden of carrying two houses and a new marriage.
Decision was reserved and on June 10, 1953 the wife was granted an increase of $25 a week. However, an order was not entered thereon over the ensuing summer and on October 23, 1953 defendant applied for a rehearing, for a reduction of the allowances and for the custody of the younger boy. The application was supported by affidavits but defendant asked leave to present oral testimony. On March 2, *99 1954 an order was made for the previously announced additional weekly award to the plaintiff, and on May 11, 1954 a second order was entered denying all of the defendant's prayers for relief.
Appeal was taken from both orders and the Appellate Division concluded that the trial court should have granted defendant's request for a formal hearing in open court. Consequently, the matter was remanded for the purpose of allowing the defendant to introduce testimony in support of his claims. Testut v. Testut, 32 N.J. Super. 95 (App. Div. 1954).
Thereafter the trial court took testimony on three separate occasions, all of which was offered by the defendant. The change of custody aspect of the matter was abandoned, and the full attention was devoted to the problem of support.
It appeared that since the original hearing a child had been born to the second wife with the attendant increased expense to defendant.
The house in Maplewood had been sold for $26,500, which was $1,000 in excess of the cost. His net proceeds were $9,147. The proceeds of this sale were allocated by Testut to the payment of a bank loan of $11,500 which he had negotiated to assist in the purchase of the Radnor house pending the disposition of the Maplewood property.
The house in Radnor is apparently a modern one situated on a half-acre of ground; it had three bedrooms and two baths on the second floor and a lavatory on the first floor. In October 1953 defendant's equity in it was $11,500 plus some amortization, the amount of which he could not furnish. He said he needed such a house because all his business associates had one-family homes and he wanted some place to entertain potential business clients. However, he had engaged in no such entertainment of any consequence during the previous year and the record seems to indicate receipt of about $30 over that year from his firm for home entertainment.
In addition to the carrying charges on the house, he had an outstanding bank loan of $3,900. It was obtained without *100 security, although he seemed evasive as to whether he had furnished any financial statement to the bank before the loan was granted. Also, he had loans on life insurance policies totaling $1,247.84. He was aggrieved at his inability to join a golf club because these obligations and the expenses of maintaining his two families made it impossible.
After all of the husband's proof has been submitted, the trial court affirmed his original order of $125 a week for the plaintiff and her children. We cannot say on the record before us that the additional award was not justified.
Upon divorce the wife and dependent children are entitled to be maintained on the same social and economic plane as they enjoyed during the life of the marriage, unless the husband's subsequent financial condition through circumstances over which he has no control renders this inequitable. For purposes of consideration of the ex-husband's capacity to maintain them, he should be treated as if he were simply living in a state of separation from his family. The obligation to support that family is paramount and the extent of the obligation measured in dollars is not to be limited or qualified by his remarriage. If it appears that his financial status is such that he can maintain his first family as its members were maintained prior to the divorce, the fact that a second marriage makes it burdensome or inconvenient to do so or occasions a deprivation of some desired luxuries or conveniences, or makes it difficult or impossible to live in the second marriage in the style and on the scale that his income would permit if the primary duty did not exist, provides no basis for reducing outstanding support orders; nor does it stand in the way of an increase thereof if the changed circumstances of the first wife make this equitable. Robins v. Robins, 106 N.J. Eq. 198, 201 (E. & A. 1929); Cooper v. Cooper, 103 N.J. Eq. 416, 419 (Ch. 1928); Hebble v. Hebble, 99 N.J. Eq. 53 (Ch. 1926), affirmed 99 N.J. Eq. 885 (E. & A. 1926); Dietrick v. Dietrick, 88 N.J. Eq. 560, 562 (E. & A. 1918); Boyce v. Boyce, 27 N.J. Eq. 433, 434 (Ch. 1876).
The defendant's financial position considered on an *101 over-all basis and apart from the burdens voluntarily assumed through his second marriage has improved since the 1949 agreement. In 1953 his income was $4,000 more than it was in 1950. The plaintiff's condition, on the other hand, has worsened because of circumstances centering largely around the advancing age of their children. This aspect of child raising is an important factor in actions such as the present one. Foote v. Foote, 68 A. 467 (Ch. 1908, not in official reports); Annotation, 18 A.L.R.2d 10, 78.
At the present rate of Testut's income, the yearly allowance to his former wife is less than one-third. Out of this gross of $6,500 she must maintain herself and the three children. The defendant has $14,210 for his wife, himself and their infant child. True, assuming the correctness of his statements and computations, his financial position at present is not all that it might be. But in satisfying some of his obligations he is improving his position with the passage of time. Moreover, it cannot be overlooked that most of his burden is the product of his own volition, namely, his second marriage and his desire to have a home of the character and cost described, which, it may be suspected from the evidence, arises more from the new marriage than the necessities of keeping up with his business associates.
The weekly increase of $25 must be sustained.
The order granting the additional allowance also dealt with the insurance policies which the defendant agreed to maintain under the 1949 compact. It provided that if the policies are cancelled the amount of the support shall be $140 weekly, or $15 more.
As already indicated, these policies are on Testut's life. His wife is the beneficiary and his voluntary agreement was to maintain that status until the youngest child attains 21 years of age, at which time he becomes free to do as he wishes with them. The salutary purpose was to provide for the college education of the children in the event of his death.
The mandate of the trial court with respect to this commitment of the defendant was probably precipitated by a question put by his counsel to his adversary during the course of *102 argument as to whether plaintiff would prefer to have $15 a week additional rather than have the policies continued. The premiums amounted to $742.08 yearly. The parties seem to be in agreement that sometime later plaintiff decided against the proposal.
As we see the proof, at no time did the defendant indicate a desire or an intention to cancel the insurance. In one of his affidavits in this proceeding he demonstrates a vigorous desire not to do so. Undoubtedly, when the 1949 agreement was negotiated the fact that Testut promised to keep these policies in force was given consideration in the fixing of the amount of the weekly support. And perhaps the court had this factor in mind in undertaking to provide for the contingency of cancellation. However, since no specific issue on the subject of cancellation was raised and since the defendant manifested every intention to stand by the solemn concord he made with his former wife on behalf of their children, in our judgment the sanction imposed should not have been included in the order. It was premature at best, the problem being one which may be presented to the court at any time in the future when a justiciable controversy arises with respect thereto.
Accordingly, the provision respecting the insurance shall be deleted from the order.
Two further objections are raised. One has to do with the action of the court in directing the defendant to pay $62.85 representing one-half of arrearages which accumulated between June 19 and September 7, 1953, and the other with an additional counsel fee allowance of $300 granted to plaintiff's counsel for work done in opposing defendant's application and participating in the three hearings pursuant to the Appellate Division remand.
The total accumulated arrearages amounted to $125.70. They arose from weekly deductions by the defendant from the sum due the plaintiff during the period when one or more of the children were visiting him. No provision for such a deduction was contained in the agreement or the judgment, but defendant apparently felt that he should be compensated *103 to some extent for support at such times. The trial court seems to have felt that in spite of the absence of that stipulation, some credit should be given and he allowed one-half of the claim. There is little proof of any substance on the matter in the record and we are unable to say that the court's solution of the problem constitutes error.
The counsel fee allowance was within the court's discretion. It is true that this Division retained the appeal pending remand for the additional oral testimony. Under the mandate, the trial court could have vacated his original orders, set aside the weekly increase or even reduced the payments under the original judgment. The work done by counsel was performed in the trial court and normally should be compensated for there and the reasonableness of the fee reviewed here. We cannot agree that the nature of the remand was such that authority was lacking to grant a fee for the services rendered in accordance therewith. Nor does the fee appear to be excessive.
Except as modified, the judgment is affirmed.