52 N.J. Super. 266 (1958)
145 A.2d 487
MARY BARTOK, PLAINTIFF-RESPONDENT,
v.
LEWIS M. BARTOK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided October 24, 1958.
*267 Before Judges GOLDMANN, CONFORD and HANEMAN.
*268 Mr. Clive S. Cummis argued the cause for appellant (Mr. Henry J. Bendheim, attorney, and on the brief).
Mr. James A. Major argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals a Chancery Division order denying his application for modification of the alimony provisions contained in the judgment nisi obtained by plaintiff. Our consideration of the facts leads to an affirmance.
The parties were married in 1948. Defendant was then an air pilot, making about $4,000 a year. During the eight years he lived with plaintiff he advanced in pay and position, eventually becoming a flight captain at a salary of $14,000 a year. In February 1956 plaintiff filed her complaint for separate maintenance, alleging that defendant had abandoned her and neglected and refused to support her. There was a second count alleging that in 1951 plaintiff had, with her own funds, purchased a lot in Teaneck, N.J., on which a home was built. Title was taken in the joint names of the parties on the advice of a psychiatrist who said it might be advantageous to do so in order that the defendant might have some degree of responsibility. The complaint alleges that plaintiff advanced the monies required for building the home, except for about $14,000, represented by a bond and mortgage executed by both parties and requiring monthly payments of $130. Plaintiff demanded judgment on this count declaring that defendant had no beneficial interest in the property and directing him to convey title to her forthwith.
Immediately following the filing of the complaint, plaintiff moved for alimony pendente lite, counsel fees and costs. Her motion was supported by an affidavit setting out the facts of the complaint, and in addition thereto that she had only $700 in a bank account; that although she had been gainfully employed for a number of years as a dancing instructor, she could no longer work because of varicose *269 veins and age; that she had been in extremely poor health for a number of years and was under doctor's care, and that she had no source of income whatever. On April 2, 1956 defendant entered into a consent order whereby he agreed to pay plaintiff alimony pendente lite from the date of the original application in the amount of $90 a week through the Bergen County Probation Office, in addition to a counsel fee, trial fee and costs.
In March 1957 plaintiff instituted an action for divorce on the ground of defendant's adultery with a named co-respondent. The complaint recited the maintenance action with its pendente lite alimony provision, and the fact that no children had been born of the marriage. Defendant, through his counsel, entered a written appearance in lieu of answer "for the purpose only of being heard on the issues of maintenance, support, counsel fees, costs, alimony and property settlement." Accordingly, he did not defend the action. On May 29, 1957 the Chancery Division entered judgment nisi in plaintiff's favor, directing that defendant pay her $90 a week alimony through the Bergen County Probation Office, and also a counsel fee, investigation costs, and costs to be taxed. The alimony figure was agreed to as part of a property settlement whereby plaintiff got sole title to the Teaneck home.
During the three-month nisi waiting period defendant bought a new home in Jutland, N.J., for $20,000, making a $4,000 down payment, the balance represented by two mortgages of $9,000 and $7,000. Final judgment was entered August 30, 1957. Defendant then married the co-respondent and moved into the Jutland home in September 1957.
On November 26, 1957 counsel for plaintiff moved to have defendant adjudged in contempt for failing to pay the fees and costs called for under the judgment nisi. Defendant countered with an application to modify the alimony provision, alleging he was going into debt trying to meet payments. This elicited an affidavit by plaintiff listing her expenses of $3,647 a year. These included $2,232 for mortgage *270 payments and taxes, insurance on her Teaneck home, utility charges, $376 income tax and $416 for cleaning and maid service. These expenses, averaging $70 a week, left her with only $20 of the weekly alimony from which to pay for food, clothing, medical expenses and all her other needs. The cleaning and maid service, she said, was necessary because of her physical condition. She had no money in bank, securities or automobile. She had tried to work for a while but her age and health were against her. (At this time she was 48, defendant 38.) Her psychiatrist had strongly advised against her selling her home and, she added, under the circumstances the house was something she could fall back on in future years  it was her only asset. As far as she knew, defendant had no insurance in her favor (this was confirmed by him at the subsequent hearing), and since he was engaged in a hazardous occupation, if anything were to happen to him she would be left in poor financial straits. She challenged the representation made in defendant's affidavit that his 1957 take-home pay was only $9,007.25 out of a salary of $14,501.65, and pointed out that he enjoys annual pay increases. Further, her affidavit alleged that every dollar she had received from her previous husband as part of a property settlement, as well as the proceeds from the sale of a house formerly owned by her, had gone into the present Teaneck home.
At the hearing on the application for reduction in alimony, defendant affirmed that he had bought his new marital home in Jutland for $20,000 before the entry of the final judgment in divorce, and had remarried soon after the judgment. His wife was expecting a child. He testified that he had earned $14,501.65 as flight captain in 1957, but that his net pay was $9,007.25. The $5,494.40 difference represented the following: $2,469.18 income tax; $94.50 social security; $202.80 group insurance; $1,234.92 retirement plan; and $1,493 paid the credit union on a loan, leaving a balance due of $1,000. We observe that the $1,493 figure is non-recurrent, so that disregarding the question of whether the retirement plan payment should be *271 considered in evaluating defendant's ability to pay, the net amount is not $9,007.25, but $10,500.25.
Defendant claimed his living expenses were $8,392.32 a year. This would average $699.36 a month. However, taking into account all monthly expenses testified to by defendant, we reach a total monthly expense of $598.53. This is some $100 a month less than defendant's figure, bringing his annual expenses to about $7,182.36. Included in our calculation of $598.53 are defendant's claimed expenses of $122.83 for mortgage payments, $17.07 for taxes, $46 in payments on two store bills (how long these will continue is not shown), and the $20 monthly installment being paid the doctor in anticipation of the baby's birth, as well as a $66 item which defendant said he would have to pay monthly if he replaced his six-year-old car with a new one.
Defendant's testimony showed that the money for the Teaneck property came from plaintiff. He admitted that when he left her he knew that as sole owner she would have to continue the mortgage payments, and that she was unemployed. He also admitted that at the time of the separation he and plaintiff had been living on a scale which used up the $14,000 he was earning. Cross-examination elicited that the $1,234.92 which he was paying on the retirement plan was entirely for his benefit and would give him an estimated $500 a month at age 60; further, that he carried no insurance in plaintiff's favor.
Defendant said he did not dispute the items set out in plaintiff's affidavit of living expenses, but was of the opinion that the $186 mortgage payment was too much. (He obviously overlooked the fact that included in that figure were local taxes.) He also thought the figures for liability insurance, fuel and water a little high, and considered the expense for cleaning and maid service unnecessary. He said he knew what his obligations were when he walked out of the former marital home and that if he remarried he would have two families to support. However, he "figured" he would reduce plaintiff's alimony "to a more reasonable *272 figure," and plaintiff, being a "smart woman," could rent out rooms. He was willing to pay her $55 a week. Asked just what his change in circumstances was since his consent to the fixing of the $90 alimony figure, defendant said that he had remarried, bought a house, and undertaken all the expenses that went with a new home.
The Chancery Division judge held that defendant had failed to make a sufficient showing of changed circumstances to warrant any modification. After reviewing many of the facts which we have set out, he recited the controlling legal principles on a husband's application for alimony reduction. It was defendant's burden, he said, to prove that his financial status and ability to earn money for the support of his former wife in the station of life in which she was entitled to be supported had changed since the entry of the divorce judgment. Boorstein v. Boorstein, 142 N.J. Eq. 135, 136 (E. & A. 1948). The court should consider all relevant circumstances, including particularly the changed needs of the former wife and the changed financial resources of the former husband, if any, citing Martindell v. Martindell, 21 N.J. 341, 355 (1956).
In the light of these principles, said the court, "the dependent former wife is entitled to be maintained on the same social and economic plane as she enjoyed during the life of the marriage, unless the husband's subsequent financial condition, through circumstances over which he has no control, renders this inequitable." He added that in considering the husband's capacity "he should be treated as if he were simply living in a state of separation from his wife. The obligation to support that wife is not limited or qualified by his remarriage." These observations were taken from Testut v. Testut, 34 N.J. Super. 95, 100 (App. Div. 1955), cited by the trial judge. He concluded that "upon a consideration of all the circumstances appearing," defendant's application for modification should be denied.
The single point raised by defendant is that remarriage is an element to be considered in determining whether or not there has been a change of circumstances warranting *273 a decrease in an alimony award. The trial court, he maintains, relied "almost entirely" on the Testut case, which is inapposite in the circumstances here present.
Every application for reduction in alimony rests upon its own particular facts, and we have been enjoined to give due recognition to the wide discretion which our law rightly affords to trial judges who deal with these matters. Martindell v. Martindell, above, 21 N.J., at page 355.
The Testut case is quite similar to this one. Although the court there observed that in considering defendant's capacity to maintain his former family he should be treated as though he simply were living in a state of separation from them, and his obligation and the measure of that obligation were not to be limited or qualified by his remarriage, it did consider all the circumstances of the parties: the social and economic level enjoyed by the wife and children while the family was still together, the property and assets of both parties, the needs of the wife and children, the husband's income, and the relation of what he was called upon to pay to what he was earning.
Decisions prior to Testut indicate that although not necessarily controlling, the remarriage of a divorced husband is a factor to be considered in an application for alimony reduction. Carley v. Carley, 131 N.J. Eq. 191 (E. & A. 1942), is perhaps the clearest expression of the rule by our court of last resort. At the time of the divorce defendant husband earned $224 a month, and plaintiff wife $20 a week. There were no children. The wife obtained a divorce decree awarding her $40 a month alimony. Defendant remarried and some four years later applied for a reduction in alimony because of debts, hospital bills for a child of the second marriage, and the illness of his second wife. The advisory master vacated the alimony order, but on appeal the court allowed the wife $20 a month. It held that defendant's duty to support plaintiff is a subsisting one, and he may not be relieved therefrom simply because he remarried and made his fulfillment more difficult, but, said the court, this obligation "should not be considered except in conjunction with *274 his new responsibilities. Carley's duty to support his present wife and their child cannot be minimized." 131 N.J. Eq., at page 193.
In Kavanagh v. Kavanagh, 134 N.J. Eq. 358 (E. & A. 1944), the court, in a short per curiam which does not review the facts, reduced the amount allowed defendant's ex-wife and two children as support and maintenance, noting that the children had grown up and were gainfully employed, defendant had remarried, and his present wife could no longer work because of poor health.
The burdens of defendant's second marriage were impliedly, if not expressly, considered relevant to a request for alimony reduction in Landis v. Landis, 131 N.J. Eq. 222 (E. & A. 1942), and Davis v. Davis, 135 N.J. Eq. 129 (E. & A. 1944), although in neither case was it given much weight in the factual setting there present. In Landis the decree nisi contained a provision, agreed upon by the parties, allowing $250 a month for the support of the wife and infant child of the marriage. The Court of Errors and Appeals affirmed the trial court's denial of reduction of that amount, noting that although defendant had remarried, his financial position had improved, that of his former wife worsened, and the child was sick. After observing that defendant had entered into the support agreement with a clear knowledge of all the obligations awaiting him when he entered upon his new marriage, the court concluded that it found no evidence of such a change in the situation of the parties as to make the present arrangement inequitable. In Davis defendant had remarried a month after plaintiff obtained her final divorce decree. A year later the former wife, then in ill health, applied for alimony and a consent order was entered. Subsequently a child was born of defendant's second marriage. Although in arrears in alimony, defendant applied for a vacation or revision of the order. In discussing the second marriage, the court remarked that defendant had remarried in the face of a potential obligation to his first wife, and that his second spouse must also be charged with knowledge of his exact position in this regard. The fact *275 that a child was born of the second marriage was just another element for the court's consideration in determining defendant's faculties and his duties and obligations. The trial court's denial of relief was affirmed.
In Padwee v. Padwee, 7 N.J. Super. 101 (App. Div. 1950), this court affirmed the advisory master's reduction of his earlier order of $27 a week for the support of the former wife and child of the marriage to $22. Defendant had remarried and had a child by his second marriage. In seeking a reduction he established that his animal hospital was running at a loss and that his physician had instructed him to move to a new home as soon as possible because the child was being exposed to infection from diseased animals. Although declaring that these circumstances were not controlling, the court said that they did present pertinent elements for consideration, along with all other relevant factors, on the advisory master's determination of the issue presented. The court held that it could not say upon the record before it that he had abused his sound discretion. Padwee was cited in Bruguier v. Bruguier, 12 N.J. Super. 350 (Ch. Div. 1951), as authority for the relevancy of a husband's remarriage and the obligations thereby assumed as factors to be considered, along with all other circumstances, in determining the amount of support to be fixed.
See, on this point, 10 N.J. Practice (Herr, Marriage, Divorce and Separation) (2d ed. 1950), § 441, p. 454, and 1958 Supplement, where the author notes that on a husband's application for decrease of the allowance, his remarriage after final judgment of absolute divorce has been taken into account (citing cases), but such remarriage "is not necessarily a ground for diminishing the amount awarded * * *."
Careful examination reveals that the cases cited to the quoted text in Testut (34 N.J. Super., at page 100) are manifestly distinguishable. In Robins v. Robins, 106 N.J. Eq. 198 (E. & A. 1930), defendant had remarried on the basis of a Mexican divorce decree held invalid because of fraud. The court refused to reduce alimony fixed in the *276 final decree, in light of defendant physician's demonstrated capacity to earn sufficient to meet his obligation. Cooper v. Cooper, 103 N.J. Eq. 416 (Ch. 1928), involved a husband who had remarried. The court held that his first duty was to support his first wife and two children, and there was no showing that he did not have sufficient resources to do so. The case did not deal with the question of whether remarriage could be considered as a changed circumstance, but decided simply that defendant would not be heard either to vacate or modify the support order until he had paid all arrearages. Hebble v. Hebble, 99 N.J. Eq. 53 (Ch. 1926), affirmed 99 N.J. Eq. 885, was a separate maintenance case in which the wife moved for an increase and defendant for a reduction in support payments. The parties still being married, remarriage did not, of course, enter the picture. Dietrick v. Dietrick, 88 N.J. Eq. 560 (E. & A. 1918), a leading case on the factors that may be considered in fixing the amount of permanent alimony, did not involve remarriage, and so in Boyce v. Boyce, 27 N.J. Eq. 433 (Ch. 1876).
One other case should be mentioned, Williams v. Williams, 12 N.J. Misc. 641 (Ch. 1934), where the court carefully reviewed the several elements that should be considered in determining an equitable basis for admeasuring alimony. We read that case to mean that the mere fact that a husband has remarried, and thus assumed new obligations, cannot in itself be successfully urged by him as a reason for modification.
The trial judge obviously considered "all the circumstances" in this case. Although he referred to the language in Testut, the whole stress of his opinion was upon plaintiff's needs, defendant's financial status and his ability to earn money, and plaintiff's right to be maintained on the same social and economic plane as she enjoyed before he left her. That he was sensitive to the controlling principle that all relevant circumstances must be considered on an application for reduction of alimony is made clear by his reference to the Martindell case.
*277 There is no showing by defendant that plaintiff's needs are less than she represents them to be. He has not demonstrated that she is living on a scale different from that which the two enjoyed before the split-up of the marriage  a time when the social and economic standards enjoyed by the couple called for an expenditure of his entire salary of $14,000 a year. Giving defendant the benefit of continuing in the retirement plan which calls for payments of $1,234.92 a year, and allowing for income tax, social security and group insurance, he still has some $10,500 a year available to him.
Our opinion in Turi v. Turi, 34 N.J. Super. 313, 322-323 (App. Div. 1955), comprehensively enumerated some of the factors which courts have considered in determining the amount of support a husband should pay:
"* * * (1) the interest of the State, society, and the community where the wife resides; (2) the wife should not be enriched nor the husband penalized; (3) the husband's property and income  and here the court may also consider his capacity to earn money through personal attention to his business; (4) the bona fide indebtedness of the husband; (5) the actual needs of the wife, although her wants are not the sole criterion; (6) the wife's age, condition of health and ability to earn support; (7) her separate property and income; (8) the sum she would have a right to expect had she and her husband continued to live together; (9) income tax; (10) the amount should be so limited as not to render separation attractive to the wife, and yet not so meagre as to make cohabitation a necessity."
We remarked that these, and other factors, find their reflection in our decisions, cited to the text of 10 N.J. Practice (Herr, Marriage, Divorce and Separation (2d ed. 1950)), § 430, pp. 421-431, and 1958 Supplement, pp. 146 ff.
The weight that should be given to the fact that defendant has remarried must be considered in the setting of all the circumstances. In this case we have a situation where defendant left his wife, incurred the obligation of a home costing $20,000 before even the entry of the divorce judgment  together with all the expenses necessarily involved in maintaining such a home  and married the co-respondent immediately after final judgment. He knew then *278 what his former wife's obligations and living expenses were, as undoubtedly did the second wife. By consenting to a $90 allowance in the judgment nisi he was impliedly representing that this was a fair allowance for the foreseeable future. Yet at that very moment he was planning the remarriage and the incurring of the added obligation which he now claims makes the allowance excessive.
Defendant presently earns $14,500, and if his increases continue, will enjoy an even larger income. In his second household he is maintaining a living standard which is certainly comfortable. At no time has he indicated that he has been forced to live rather modestly in order to meet his obligations to plaintiff; instead, he would continue his present scale of living by having our courts reduce an alimony allowance voluntarily entered into with full knowledge of all the pertinent facts, and by having his former wife take in boarders.
In the light of these considerations and all the circumstances of the case we are not inclined to give much weight to his claim of changed circumstances because of remarriage. On equitable grounds, the trial judge would have been justified in giving that single circumstance little weight in the balance of all the other factors present before him.
For the reasons indicated, the result at which the trial judge arrived was a just one, and his denial of defendant's application for a revision of the alimony provision of the judgment nisi is affirmed.
Since the Chancery Division's supervision of the alimony order is a continuing one, defendant may in the future apply for modification upon a showing that changed circumstances, whether his own or his former wife's, demonstrably and equitably demand a reduction in the alimony provision.