246 N.J. Super. 1 (1991)
586 A.2d 839
HENRY JAMES OHLHOFF, PLAINTIFF-RESPONDENT,
v.
MARY ANN OHLHOFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 1990.
Decided February 4, 1991.
*2 Before Judges GAULKIN, HAVEY and SKILLMAN.
*3 Jack S. Zakim, for appellant.
Rupp & Ten Hoeve, for respondent (John E. Ten Hoeve, Jr., on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The primary issue presented by this appeal is whether N.J.S.A. 2A:17-56.23a, which bars any retroactive modification of child support, is applicable with respect to child support payments which accrue during a period when a supported child is residing with the supporting parent.
The parties were divorced on May 26, 1982. The judgment of divorce incorporated by reference a settlement agreement, dated August 20, 1980, which granted custody of the two minor children of the marriage, then ages three and six, to defendant and required plaintiff to pay $840 per month in support. This obligation was allocated as $262.50 for alimony and $288.75 for the support of each child. These amounts were to be increased 5% annually, commencing January 1, 1981.
In May 1987, one of the children, Christopher, then age 13, moved from defendant's home to plaintiff's home. Although it was unclear initially whether this change would be temporary or long-term, Christopher had continued to reside in plaintiff's home until the day this matter was heard in the trial court. Shortly after Christopher moved into his home, plaintiff reduced his child support payments to defendant by $200 per month. He continued making child support payments at that reduced level until December 1988, at which time he terminated all payments of support on behalf of Christopher.
On January 23, 1989, defendant's counsel sent a letter to plaintiff which, among other things, demanded that he resume support payments on behalf of Christopher. When plaintiff did not accede to this demand, defendant filed a motion to compel him to pay child support arrearages in accordance with his obligations under the 1980 settlement agreement. Plaintiff *4 filed a cross motion seeking, among other things, custody of Christopher, termination of his support obligation on behalf of Christopher, and elimination of all arrearages for the support of Christopher, retroactive to May 1987. In opposing the part of plaintiff's motion seeking the elimination of child support arrearages, defendant relied upon the part of N.J.S.A. 2A:17-56.23a which prohibits the retroactive modification of child support.
The trial court granted the parts of plaintiff's motion seeking custody of Christopher, termination of his support obligation on behalf of Christopher and elimination of the support arrearages, retroactive to May 1987, and denied the part of defendant's motion seeking support arrearages. Relying upon Prikril v. Prikril, 236 N.J. Super. 49, 563 A.2d 1164 (Ch.Div. 1989), which holds that a change in the physical custody of a child, even though not formalized by court order changing legal custody, automatically abrogates an obligation to pay child support, the trial court concluded that N.J.S.A. 2A:17-56.23a did not bar the retroactive termination of child support on behalf of Christopher.
Although defendant's brief contains five point headings, all of her arguments are addressed to the single point that any retroactive modification of plaintiff's child support obligation on behalf of Christopher is barred by N.J.S.A. 2A:17-56.23a and therefore that the trial court should have entered a judgment for the full amount of support withheld by plaintiff.[1]
We conclude that a change in the residence of a child with respect to whom there is an outstanding support order does not automatically abrogate a support obligation. Consequently, N.J.S.A. 2A:17-56.23a is applicable under such circumstances. *5 We further conclude that this statute is prospective in operation only and therefore does not bar the elimination of child support arrearages for the period prior to its effective date, November 20, 1988. Finally, we reject plaintiff's argument that N.J.S.A. 2A:17-56.23a violates article 6, section 2, paragraph 3 of the New Jersey Constitution. Accordingly, we affirm the trial court's order denying defendant's application for arrearages insofar as it applies to the period prior to the effective date of N.J.S.A. 2A:17-56.23a but reverse and remand for further proceedings in conformity with this opinion with respect to the period subsequent to that date.[2]

I
On August 22, 1988, the Governor signed into law Chapter 111 of the Laws of 1988, entitled "An Act Concerning Child Support Enforcement," now codified as N.J.S.A. 2A:17-56.23a, which provides in pertinent part:
No payment or installment of an order for child support, or those portions of an order which are allocated for child support, shall be retroactively modified by the court except for the period during which the party seeking relief has pending an application for modification, but only from the date of mailing the notice of motion to the court or from the date of mailing written notice to the other party either directly or through the appropriate agent.
This statute, which was made effective 90 days after enactment, was designed to conform with federal legislation which provides that, as a condition of receiving federal funding for collection of child support arrearages, states must comply with various federal standards governing child support, which include a requirement that child support obligations may not be subject to retroactive modification on and after the date they are due. 42 U.S.C.A. § 666(a)(9)(C).
*6 On its face, N.J.S.A. 2A:17-56.23a bars any retroactive modification of a child support obligation, regardless of the reason for the requested modification. The statute contains no exception for a situation where the supported child has temporarily or even permanently moved into the home of the supporting parent. However, the trial court concluded, relying upon the reasoning in Prikril v. Prikril, supra, that a child support obligation is "`discharged' as a `matter of law'" by a change in the physical custody of a child, 236 N.J. Super. at 51, 563 A.2d 1164, and therefore that N.J.S.A. 2A:17-56.23a is inoperative in this situation.
We disagree with the essential premise of Prikril that a child support obligation is automatically abrogated, and consequently that support may be unilaterally withheld without court authorization, if a child moves from the home of the parent to whom support is owed into the home of the supporting parent. Therefore, we overrule Prikril.
There is no New Jersey case which directly addresses the effect of a change of a supported child's residence upon a support obligation. Di Tolvo v. Di Tolvo, 131 N.J. Super. 72, 77, 328 A.2d 625 (App.Div. 1974), the only case on this point cited in Prikril, simply noted the entry of a consent order terminating support for a child who had moved into the home of the supporting parent, and thus has no precedential significance. Moreover, it is implicit in Testut v. Testut, 34 N.J. Super. 95, 102-3, 111 A.2d 513 (App.Div. 1955) and Brummer v. Brummer, 6 N.J. Super. 401, 407, 69 A.2d 38 (Ch.Div. 1949) which dealt with supporting parents' claims to credits for amounts expended while the supported children were residing with them, that child support obligations are not automatically abrogated when a child moves into the home of the supporting parent. Decisions in other jurisdictions are generally in agreement with this view. See, e.g., Baures v. Baures, 13 Ariz. App. 515, 478 P.2d 130, 133-34, 47 A.L.R.3d 1024, 1028-29 (Ct.App. 1970); In re Marriage of Eagen and Eagen, 292 Or. 492, 640 *7 P.2d 1019 (1982); In re Marriage of Oliver, 43 Wash. App. 423, 717 P.2d 316, 318 (Ct.App. 1986); see generally, Annotation, Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for other Voluntary Expenditures, 47 A.L.R.3d 1031 (1973).
We now expressly adopt the rule implicit in Testut and Brummer and hold that a child support obligation is not automatically abrogated when a child for whom support is owed moves into the home of the supporting parent. A child's change of residence from a custodial to a noncustodial parent is seldom permanent at the time of its inception, especially when the change occurs on the initiative of a teenager who believes that he or she will be happier living with the other parent. Generally, some time must elapse before the child can decide whether the new living arrangement really will be more to his or her liking and before the custodial parent can decide whether to accept the change on a permanent basis. In the interim, the custodial parent ordinarily must continue to bear the expense of housing which includes a room for the child. Furthermore, the parents may have different perceptions of the permanency of a child's change of residency. The noncustodial parent into whose home the child has moved may consider the change to be permanent immediately while the custodial parent may continue to believe even a substantial time afterwards that the child will eventually return to that parent's home. We thus perceive no basis for concluding that a parent's child support obligation is automatically abrogated if the child moves into the home of the supporting parent. Therefore, unless the parties are able to agree upon a termination or modification of child support, the supporting parent is required to obtain court approval before terminating or reducing support for a child who presently resides with that parent.
An additional reason for holding that a supporting parent may not unilaterally terminate the support for a child who moves into that parent's home is that the support paid for one child cannot be isolated from support paid for other members of *8 the family unit. Although a court order or agreement of the parties may allocate separate amounts as alimony for the supported spouse and support for each child, those allocations are often arbitrary and may not accurately reflect the actual needs of the individual members of the family. Consequently, even if a child's move into the home of the supporting parent has sufficient permanency to warrant a complete termination of support for that child, it may be appropriate when that support is terminated to increase the support payable for other members of the family.
Since we conclude that an obligation for child support is not automatically abrogated when a child moves from the home of the supported parent into the home of the supporting parent, we also conclude that the prohibition against retroactive modification of child support obligations imposed by N.J.S.A. 2A:17-56.23a is applicable under these circumstances. Compare Thorson v. Thorson, 241 N.J. Super. 10, 574 A.2d 53 (Ch.Div. 1989) (N.J.S.A. 2A:17-56.23a is inapplicable where child support has been automatically terminated upon the emancipation of a child in accordance with the terms of the judgment of divorce). Any other conclusion not only would be inconsistent with the express language of the statute but also would undermine the essential objective of N.J.S.A. 2A:17-56.23a, which is to simplify administration of child support payments by requiring a supporting parent to apply promptly to the court for any modification. As explained in the statement to Senate Bill 1510, which was later enacted as N.J.S.A. 2A:17-56.23a: "In order for [a modification of child support] to occur in an equitable manner for all parties, the obligor parent should be required to officially notify the custodial parent and the court ... that a modification is sought."
Although we would be compelled to abide by the statutory prohibition against retroactive modification of child support even if it would lead to the inequitable consequences perceived by the court in Prikril, we do not believe such consequences *9 are inevitable. When the residence of a supported child changes, the parties may often expressly agree upon a modification of support arrangements. And even without an express agreement, the parties' course of conduct subsequent to the change may reflect an implied agreement to modify support which a court may enforce. See Dunne v. Dunne, 209 N.J. Super. 559, 571, 508 A.2d 273 (App.Div. 1986); see also Schulz v. Ystad, 155 Wis.2d 574, 456 N.W.2d 312, 322-24 (1990). In this case, for example, the trial court could find that defendant's acceptance for a year and a half of $200 per month less for Christopher's support than provided by the settlement agreement constituted an implicit agreement that her financial need had decreased by this amount as a result of Christopher residing with his father. In addition, the court may consider whether defendant should receive any credit for amounts expended on behalf of Christopher. See Testut v. Testut, supra, 34 N.J. Super. 95, 111 A.2d 513; Brummer v. Brummer, supra, 6 N.J. Super. 401, 69 A.2d 38; see also Annotation: Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for other Voluntary Expenditures, supra, 47 A.L.R.3d 1031. However, the parties have not had an opportunity to brief these issues. Furthermore, the parties may not have presented all evidence relevant to plaintiff's obligation for child support after November 20, 1988. Therefore, we conclude that the matter should be remanded to the trial court to consider these issues and, if appropriate, to allow the parties to supplement the record.

II
Because the trial court held that N.J.S.A. 2A:17-56.23a was inapplicable under the circumstances of this case, the court did not have to decide whether the statute bars modification of support payments which became due before its effective date. However, the court expressed the view in colloquy with counsel that if the statute applied at all, it would bar any modification of plaintiff's child support obligation, including amounts which *10 became due before its effective date. And plaintiff argues that if N.J.S.A. 2A:17-56.23a is applicable, it should be held to be prospective only and thus not to affect the part of the trial court's order modifying his support obligations which became due before its effective date. Consequently, we must decide whether N.J.S.A. 2A:17-56.23a applies retroactively.
The general rule is that statutes apply prospectively only. Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981). Prospective application tends to minimize unfairness by giving advance notice of the rules that are to be applied to people's actions. Id. at 522, 432 A.2d 80. Retroactive application of a statute is appropriate only when the Legislature has indicated that the statute is to be applied retroactively, when the statute is ameliorative or curative, or when there are other compelling considerations which require retroactive application. Id. at 522-23, 432 A.2d 80.
We see no basis for giving N.J.S.A. 2A:17-56.23a retroactive effect. There is no expression of a legislative intent, either express or implied, to give N.J.S.A. 2A:17-56.23a retroactive effect. To the contrary, the fact that the statute was not made effective until 90 days after enactment, L. 1988, c. 111, § 2, suggests a legislative awareness that affected parties had relied upon prior law and that N.J.S.A. 2A:17-56.23a should apply only after matrimonial lawyers had been given some time to adjust their practices to its provisions. Furthermore, the statute is not ameliorative or curative. As we indicated in Kendall v. Snedeker, 219 N.J. Super. 283, 286-88, 530 A.2d 334 (App.Div. 1987), the term "ameliorative" applies only to a statute which decreases criminal penalties, and the term "curative" applies only to a statute which clarifies the intent of legislation which was imperfectly expressed in its original form. Clearly, neither of these concepts has any applicability to N.J.S.A. 2A:17-56.23a, which represented a significant change in New Jersey law that had long permitted a party against whom arrearages were sought to move for a retroactive modification *11 of child support and vacation of arrearages. See, e.g., Mastropole v. Mastropole, 181 N.J. Super. 130, 141, 436 A.2d 955 (App.Div. 1981); Winter v. Winter, 162 N.J. Super. 456, 461, 393 A.2d 593 (App.Div. 1978). The conclusion that N.J.S.A. 2A:17-56.23a should not be applied retroactively is also supported by Schulz v. Ystad, supra, 155 Wis.2d 574, 456 N.W.2d 312, which construed a Wisconsin statute designed like N.J.S.A. 2A:17-56.23a to bring that state into conformity with the provisions of 42 U.S.C.A. § 666(a)(9)(C) to apply prospectively only.[3]
Accordingly, we hold that N.J.S.A. 2A:17-56.23a applies only to child support which became due after its effective date. Thus, the part of Harris v. Harris, 235 N.J. Super. 434, 441-46, 563 A.2d 64 (Ch.Div. 1989) which states that N.J.S.A. 2A:17-56.23a should be given retroactive effect is overruled.

III
Finally, we reject plaintiff's argument that N.J.S.A. 2A:17-56.23a conflicts with the Supreme Court's authority over "practice and procedure" under article 6, section 2, paragraph 3, of the New Jersey Constitution. It is now recognized that the line between procedural and substantive law is blurry. Busik v. Levine, 63 N.J. 351, 364-68, 307 A.2d 571 (1973), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). For this reason and in the interest of avoiding conflict among the branches of government, our courts are extremely hesitant to characterize a subject as purely procedural and consequently within the exclusive authority of the Supreme Court. Id. at 373, 307 A.2d 571. Thus, in Knight v. Margate, 86 N.J. 374, 389, 431 A.2d 833 (1981), the Court observed that:
[I]t may not always be possible to identify a subject as belonging exclusively to a particular branch. In those situations responsibility is joint and governmental *12 powers must be shared and exercised by the branches on a complementary basis if the ultimate governmental objective is to be achieved.
Applying these principles, we are satisfied that N.J.S.A. 2A:17-56.23a so directly impacts upon substantive rights and obligations relating to child support that it should be viewed as primarily substantive rather than procedural in nature. Therefore, we conclude that N.J.S.A. 2A:17-56.23a does not trespass upon the Supreme Court's rulemaking authority with respect to practice and procedure in the courts.
Since N.J.S.A. 2A:17-56.23a does not operate retroactively to bar modification of child support obligations which became due before its effective date, we affirm the order on appeal insofar as it denied defendant's motion for arrearages prior to the effective date of the act, November 20, 1988. However, since N.J.S.A. 2A:17-56.23a is applicable even though the child for whom support is owed resided with the supporting parent during the period in question, we reverse the order on appeal insofar as it denies arrearages from November 20, 1988 until the date the motion to terminate support for Christopher was mailed and remand for further proceedings in conformity with this opinion.
NOTES
[1] We note that defendant has not argued that even if N.J.S.A. 2A:17-56.23a is inapplicable, the order eliminating support arrearages should be reversed because plaintiff failed to present sufficient evidence to justify a retroactive modification of child support or because the trial court erred in not scheduling a plenary hearing.
[2] The order which is the subject of this appeal also required plaintiff to provide defendant with proof of the existence of life insurance coverage and denied both parties' applications for counsel fees. Neither these provisions nor the provisions awarding custody of Christopher to plaintiff and terminating his future obligation to pay support for Christopher are challenged on this appeal.
[3] Indeed, Schulz went even further than we do in limiting the retroactive effect of N.J.S.A. 2A:17-56.23a, by holding that that state's legislation restricting the modification of child support orders should apply only to support orders entered after its effective date.