Billy S. KARPULEON, Appellant,

v.

Deborah K. KARPULEON, Appellee.

No. S-5433.

Supreme Court of Alaska.

Sept. 30, 1994.

William T. Ford, Anchorage, for appellant.

Kenneth C. Kirk, Anchorage, for appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

MOORE, Chief Justice.

### I. INTRODUCTION

The single issue presented in this appeal is whether a self-executing agreement for future shifting of child support payments, incorporated by reference into the decree of dissolution, should be given legal effect, despite the prohibition in Alaska Civil Rule 90.3(h)(2) on retroactive modifications of child support arrearages. We hold that the parties' agreement is effective.

### II. FACTS AND PROCEEDINGS

Billy and Deborah Karpuleon filed for dissolution on August 29, 1989. The parties had two children: Cari, who turned 18 in December 1990; and Aaron Scott (Scott), who turned 18 in July 1992. The parties had originally intended to split custody of the children, with Cari living with her mother and Scott with his father. The parties included in their Petition for Dissolution a child support calculation providing that Billy would pay $470 per month in child support.

Before the granting of the dissolution, both children went to live with Billy. The parties filed an Amendment of Agreement on Octo-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

ber 16, 1989. The Amendment included the following provisions: (1) The parties would have joint legal custody of the children; (2) The children would reside primarily with Billy; (3) Deborah would have liberal visitation rights; (4) *The court would waive child support from Deborah due to financial considerations;* (5) Billy would pay Deborah $200 per month in spousal support until the end of 1990 or until she remarried; (6) While the children were primarily residing with Billy, he would claim them on his income taxes; (7) *If the children moved back with Deborah at a later date, Billy would pay child support to Deborah;* (8) The parent paying the majority of support for the children would claim them on his or her income taxes; (9) If one child resided with Billy and one with Deborah, each would claim one child on their income taxes.

Superior Court Master Lucinda McBurney responded to the proposed amendment in a letter dated November 6, 1989. She informed the parties that she would only recommend waiving Deborah's current child support obligations upon the condition that Deborah pay child support pursuant to Civil Rule 90.3 once spousal support terminated. After Deborah unsuccessfully attempted to have Judge Reese overrule this determination, the parties filed a second Amendment of Agreement which provided that Deborah would begin child support payments on January 1, 1991, when spousal support payments terminated.

On February 21, 1990, the superior court issued its decree of dissolution of marriage. The decree awarded physical and legal custody of the minor children to Billy Karpuleon and ordered that "Deborah Karpuleon is to pay child support pursuant to Civil Rule 90.3 when spousal support payments cease." Unbeknownst to the court at that time, the parties had entered into a side agreement on January 22, 1990 in which Billy waived any entitlement to child support from Deborah.

In September 1991, after Cari had become emancipated, the parties' younger child Scott moved in with his mother. On March 2, 1992, Deborah filed a motion to modify child custody and support. Billy did not respond, so Judge Andrews ordered him to provide a Child Support Guidelines Affidavit. Billy complied; however, he did not oppose the motion. Judge Andrews ordered him to pay child support of $868.50 per month from April to July of 1992, at which time Scott would reach the age of majority.

Billy then filed a motion for the child support which Deborah had not paid from January 1991 (when spousal maintenance ceased) until September 1991 (when Scott stopped living with Billy). He asked to have this amount, which he claims totals $3,322.08,[1] set off against his obligation of $3,474. Deborah opposed, submitting the waiver of child support which Billy had signed. A hearing was held on August 13, 1992 before Master McBurney, who issued a master's report which Judge Andrews approved on October 1, 1992.

The master made the following recommendations: (1) Billy's waiver of any entitlement to child support from Deborah was invalid, so that Deborah owed Billy child support from January 1991 to September 1991, totalling $2,848; (2) For the period of September 1991 through March 1992 the first Amendment of Agreement—which specifically addressed the issue of child support should the children change residences—governed, so that Billy owed Deborah child support for that seven-month period; (3) Billy still owed Deborah for support from April 1992 until the emancipation of Scott in July 1992; (4) Billy therefore owed Deborah for eleven months of support, totalling $9,553; and (5) Adding all of the arrearages together, Billy owed Deborah a net of $6,705.

Billy filed a motion for reconsideration, which was denied. Billy appeals the requirement that he pay support from September

1. Billy's supporting memorandum claimed that Deborah owed him arrearages of approximately $3,501. He now admits that this amount was calculated incorrectly and should have been

$3,322.08. Master McBurney calculated this amount to be $2,848, based on a monthly obligation of $356 per month and not including the

1991 through March 1992.[2]

### III. *DISCUSSION* [3]

#### A. *Retroactive Modification of Child Support*

 Billy argues that the master and the superior court erred in assessing child support against him for the period of September 1991 through March 1992. He contends that under the court order in effect during that period, Deborah owed him child support. Billy argues that the assessment of child support against him is therefore an impermissible retroactive modification of child support, and that he owes no support for the period preceding Deborah's motion to modify.

 Alaska Civil Rule 90.3(h)(2) [4] prohibits retroactive modification of child support arrearages. The Commentary to Civil Rule 90.3 provides in pertinent part:

### X. MODIFICATION

. . . .

The Omnibus Budget Reconciliation Act of 1986, P.L. 99–509, Section 9103(a) (the Bradley Amendment),[5] prohibits retroactive modification of child support arrearages. Rule 90.3(g)(2) [sic] is intended to restate this prohibition, including the exception allowed by federal law for modification during the pendency of a modification motion.

The prohibition against retroactive modification limits both requested decreases and increases in child support. See Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed.Reg. 15,763 (1989). Thus, *either the custodial or the*

*obligor parent should promptly apply for a modification of child support when a material change in circumstances occurs.*

(Emphasis added). Since a supported child's change in residency constitutes a "material change in circumstances," the Commentary language suggests that the burden is on the parents to promptly apply for modification in this case.

Deborah argues that the requirement to apply for a modification of support should be waived in her case because of the self-executing modification agreement incorporated into the decree of dissolution. She argues that this court should simply give effect to the parties' prior agreement that "if the children move back with Deborah at a later date, Bill will pay child support to Deborah." This was the position taken by the master below and approved by the judge.

Deborah points out that this case does not involve a retroactive modification of a parent's child support obligation, but rather a *shifting* of the support obligation when custody shifts. She states that "[i]n many cases it is not feasible for the parents to run back into court each time the child changes custody." While Civil Rule 90.3(h)(2) may prohibit a parent from receiving a retroactive modification of his or her *arrears* in such a situation, it does not prohibit a prior order shifting the child support obligation.[6]

We must determine whether the policy reasons for giving effect to an agreement between divorcing spouses over future shifting of child support obligations outweigh the policy reasons behind prohibiting retroactive

September 1991 payment in Deborah's obligation.

2. Deborah does not appeal the superior court's finding that Billy's waiver of entitlement to child support was void.

3. We generally review decisions on motions to modify child support for abuse of discretion. *See, e.g., Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988). However, we review this decision *de novo,* since the relevant facts are undisputed and purely legal issues are involved. *See, e.g., Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. Civil Rule 90.3(h)(2) provides:

Child support arrearages may not be modified retroactively. A modification which is effective on or after the date that a motion for modification is served on the opposing party is not considered a retroactive modification.

5. The Bradley Amendment is codified at 42 U.S.C. § 666(a)(9) (1988).

6. The Bradley Amendment itself is not directly applicable to this case as it merely specifies what laws a state must have in order to receive federal funds; the Bradley Amendment is not itself a substitute for state law.

child support modifications. The commentators to the Department of Health and Human Services' implementation of the Bradley Amendment expressed dissatisfaction with laws allowing a retroactive reduction of child support "without placing any diligence requirement on the absent parent to petition in a timely manner to reduce the order." Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed.Reg. 15,757, 15,-758 (1989) (to be codified at 45 C.F.R. pts. 302, 303 and 305). They also expressed concern that "[s]uch laws further permitted arguments to be made about changed circumstances in prior periods at a time when evidence may not have been easily attained or available." *Id.* Such evidentiary issues may arise not only in cases where the changed circumstances are relevant to arrearages but also in cases such as this where changed circumstances may warrant a shifting in the support obligation.

Billy cites a New Jersey case which discussed the special evidentiary considerations involved when a teenage child changes residences, believing that he or she will be happier living with the other parent. *Ohlhoff v. Ohlhoff,* 246 N.J.Super. 1, 586 A.2d 839, 842 (App.Div.1991). *Ohlhoff* pointed out the difficulties inherent in determining whether such changes in the child's residence will be permanent. *Id.* In the instant case, Billy stated in an affidavit that the change in Scott's residence was considered temporary at the time:

> SCOTT said he wanted to live with his mother for awhile and we all agreed that a cooling off period might be in order. SCOTT went back to his mother's house, but took no other clothes with him. His dresser is full and he still has all of his things in my closet in my house. He also still receives his mail at my house and I make arrangements to get it to him.

Thus, the precise problem with which *Ohlhoff* was concerned is raised in the Karpuleons' case.

Deborah agrees that teenage children may require different treatment by the court; in fact, she asks this court to take judicial notice that older children often change custody on a temporary basis. However, she argues that in many cases it is impractical for the parents to run back into court each time the child changes custody, and that therefore allowing shifting child support orders would be good public policy.

The responses to public comments contained in the federal regulations discuss the effect of prospective modifications:

> Federal law and regulations do not preclude the States from having laws that permit automatic prospective suspension or prospective termination upon the development of specific circumstances such as the emancipation or death of a child. Such "modifications by operation of law" upon the occurrence of an event known to both parties, if applicable generally to all child support orders in the State, would not appear to contradict the intent of the law.

54 Fed.Reg. at 15,761. A possible temporary change of the child's residence lacks the same legal significance or permanence as death or emancipation of the child. The shifting of the support obligation in this case occurs upon the children "mov[ing] back with Deborah," the occurrence of which is a somewhat subjective determination. Yet, to the extent our decision becomes binding precedent, it will meet the contemplated requirement of being applicable to "all child support orders in the State" where similar circumstances exist.

We conclude that Deborah has shown with sufficient certainty that Scott moved in with her in September 1991. We find that the details of when the prospective automatic termination and shifting of the obligation would occur were sufficiently clear that the parties should be held to their agreement in this case. Policy considerations may have dictated a different result if the agreement had not been in writing, or had the timing of the child's change in residence been more nebulous. However, in reaching our decision, we are merely upholding the written agreement between the parties, as incorporated into the decree of dissolution. We also note that our decision will not cause a retroactive modification of the support obligation,

but will merely enforce the shifted obligation, as contemplated in the written agreement.[7]

### B. *Equitable Estoppel Argument*

Deborah argues that the doctrine of equitable estoppel should apply to prevent a parent who has not actually had custody of the child from asserting a claim for child support arrearages. Deborah acknowledges that such an approach would violate the rigid rule against child support modifications, but she cites a line of Illinois cases which she claims have continued to apply equitable estoppel even after adopting the strict federal prohibition on retroactive modifications.

Regardless of the merits of the argument, the entire equitable estoppel discussion is moot in this appeal. Deborah acknowledges that the application of equitable estoppel would not entitle her to an award of child support for the period in question (October 1991 to March 1992). She merely claims that the doctrine should prevent Billy from asserting a claim for child support for this same period. This argument is moot because Billy has asserted both to the superior court and this court that he is not attempting to collect child support for this period, but merely for January 1991 to September 1991.

### IV. *CONCLUSION*

For the reasons stated above, the order of the superior court is AFFIRMED.

---

**7.** Billy also disagrees with the master's failure to include the September 1991 payment in Deborah's past due obligation, and with her finding that Billy's obligation of $868.50 began in September and not October of 1991, even though Scott did not move out of his father's residence until sometime late in September. Billy did not raise this issue in his Statement of Points on Appeal, and therefore we consider it waived. *See Welcome v. Jennings,* 780 P.2d 1039, 1042 n. 4 (Alaska 1989).