**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0147-21

DENISE MORIN, n/k/a
DENISE LAMBRECHT,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

MICHAEL MORIN,

      Defendant-Respondent/
      Cross-Appellant.

_____

          Argued August 2, 2022 – Decided August 15, 2022

          Before Judges Geiger and Rose.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0701-11.

          Kathleen Pasquarello Stockton argued the cause for appellant (Stockton Family Law, LLC, attorneys; Kathleen Pasquarello Stockton and Jessica A. Beardsley, on the briefs).

Howard S. Mendelson argued the cause for respondent (Davis & Mendelson, LLC, attorneys; Howard S. Mendelson and Andrew T. Parsinitz, on the briefs).

PER CURIAM

In this post-judgment dissolution matter, plaintiff Denise Morin, now known as Denise Lambrecht, appeals from an August 13, 2021 Family Part order that denied her application for child support for the parties' then fifteen-year-old daughter. Defendant Michael Morin cross-appeals two aspects of the same order that denied his requests for a plenary hearing to address the child's best interests and for an award of counsel fees relating to his successful opposition of plaintiff's application for child support. We affirm in part, reverse in part, and remand.

We take the following facts from the record. The parties were married in September 1996. Three children were born of the marriage. The children were born in February 1998, January 2000, and April 2006, respectively. The two older children were declared emancipated effective May 31, 2019. The child support order in dispute relates to the youngest child, M.M., who is now sixteen.

In January 2012, the parties entered into a property settlement agreement (PSA), that resolved the issues of spousal support, custody and parenting time, child support, equitable distribution, counsel fees, and related issues. The

A-0147-21

parties were divorced on February 7, 2012. The final judgment of divorce incorporated the terms of the PSA by reference.

The PSA provided for joint legal custody of the children, with co-equal parenting time in a true shared parenting arrangement. Consequently, neither party was designated as parent of primary residence (PPR) or parent of alternative residence (PAR). The parties enjoyed parenting time on alternate weekends and a split weekday schedule. Holidays were shared in accordance with the Gloucester County Holiday Schedule. Each party also enjoyed two non-consecutive weeks of vacation parenting time each year. A licensed social worker was utilized as the parenting coordinator, with the cost equally shared.

As to child support, Article 3.1 of the PSA provides:

> The parties acknowledge that they shall be exercising a co-equal parenting time plan, and that each party shall be servicing and providing for the children's controlled expenses within each of their households. Under a current child support guideline calculation, and offsets for controlled expenses pursuant to Wunsch-Deffler v. Deffler, 406 N.J. Super. 505 (Ch. Div. 2009), the parties acknowledge that a nominal or otherwise negative figure would be due to one or the other party if he or she was named "PPR" for child support purposes. Accordingly, given the co-equal parenting time arrangement, and each party's respective earnings and earning potential, neither party shall be obligated to pay child support to the other at this time.

A-0147-21

The parties shall equally share the responsibility for purchasing controlled expenses, such as clothing, shoes, coats, school supplies, and the like, on an informal and unstructured basis.

Article 3.2 of the PSA provides that the parties shall share specified extraordinary expenses incurred on behalf of the children, including work-related day care, uncovered medical expenses, and extracurricular activities. The PSA further provides that plaintiff maintained the medical, dental, vision, and prescription insurance coverage for the children, with the parties to equally share the cost of that coverage. The PSA also contains sections governing college expenses and life insurance. Article VI provides that "[t]he parties shall each be responsible for his or her own counsel fees incurred in connection with the negotiation and entry of [the PSA]."

The parties have engaged in motion practice since the divorce was granted. An April 22, 2020 consent order suspended plaintiff's child support obligation to defendant effective July 11, 2019. It further provided that "neither party will be obligated to pay child support to the other for the unemancipated child, [M.M.] consistent with the attached N.J. Child Support Guidelines Shared Parenting Worksheet (Exhibit "A")." Nevertheless, "either party may make a subsequent application for child support upon a change in circumstances." Finally, the order recited that there was "an issue in dispute between the parties

4

relating to custody and parenting time" with M.M. and "that either party may seek to modify the prior Agreement and [o]rder as it relates to custody and parenting time" by application to the court.

Defendant subsequently moved to enforce litigant's rights, specifically the terms of the PSA regarding co-equal, true, shared parenting time with M.M. He claimed plaintiff had not required M.M. to attend parenting time with him since April 8, 2020. Defendant further claimed plaintiff alienated M.M.'s affections for him. Defendant also sought sanctions, an award of counsel fees relating to the motion, and an award of compensatory parenting time for the parenting time lost since April 8, 2020. Defendant requested the appointment of a licensed professional counselor to address the reparation of the relationship between M.M. and defendant and that M.M. continue her personal therapy sessions with Nina Kardos, LCSW.

Plaintiff cross-moved for a modification of the custody and parenting time arrangement, and requested a plenary hearing to determine the best custody and parenting time arrangement for M.M. She also requested appointment of a neutral reunification/family therapist and guardian ad litem for M.M., with costs to be shared equally by the parties. Finally, plaintiff sought an award of counsel fees and costs related to the motion. Plaintiff argued that it was M.M.'s decision

5

not to spend parenting time with defendant. Plaintiff noted defendant's anger issues and alleged that during defendant's parenting time on April 8, 2020, things were so out-of-hand, she was forced to call the police to do a wellness check to ensure M.M. was safe. Plaintiff contended that upon her return home, M.M. expressed her desire to not spend time with defendant.

Following oral argument, the court issued a twenty-page June 12, 2020 order with an embedded statement of reasons. The court noted that the parties "are unable to determine the best interests of the child." The court recognized that M.M., who was then fourteen years old, was "old enough to have a voice regarding parenting time, or at least to have her opinion be given weight in custodial determinations." The court stated that defendant's text messages

> seem to confirm that he has an emotionally unhealthy relationship with the child in the sense that the text messages reflect him resorting to name-calling and guilting the child into attending parenting time on several occasions. However, this alone is not enough for this court to determine M.M. may cease visitation with her father.

The court agreed to appoint a parenting time/best interest evaluator "to assess the suitability of the parties for parenting M.M. and propose a parenting time schedule which is in the best interests of the child." A plenary hearing would follow the submission of the evaluator's report.

A-0147-21

The court ordered that M.M. continue to receive personal therapy services from Ms. Kardos, but declined to appoint a guardian ad litem or other expert. It "encouraged" defendant "to work with Ms. Kardos in building or mending some bridges with M.M. so that some minimum parenting time could take place" in the interim.

The court ordered that defendant have five hours of parenting time on Father's Day with a third-party present. It declined to compel plaintiff to require M.M. to attend parenting time with defendant and deferred that issue to the plenary hearing. The court also deferred defendant's requests for compensatory parenting time and to hold plaintiff in violation of litigant's rights sanctions, pending the outcome of the plenary hearing. Defendant's request to impose sanctions was denied without prejudice.

As to the cross-applications for an award of counsel fees and costs, the court noted that defendant sought fees in the amount of $4,174 and costs of $376. The court declined to award counsel fees to either party, without prejudice to the results of the plenary hearing.

The court subsequently entered a March 4, 2021 order with embedded statement of reasons. The court noted that Gregory W. Joseph, Psy.D. performed a best interests evaluation and issued his report on December 16,

A-0147-21

2020. During the hearing on January 12, 2021, the parties agreed to follow the recommendations of Dr. Joseph without exception. However, the parties could not agree on the language of the order. The court presented two options to the parties, either: (1) consent to the court preparing an order requiring them to follow the letter and spirit of Dr. Joseph's recommendations; or (2) proceed to a plenary hearing. The parties agreed to the entry of on an order prepared by the court reflecting Dr. Joseph's recommendations. The operative paragraphs of the March 4, 2021 order stated:

> 1. Shared legal custody.
>
> 2. The parenting time arrangement should remain unchanged with the understanding that [defendant's] parenting time will gradually be restored under the direction of a reunification therapist as described in #3 below. Additionally, outside of the reunification work and in light of M.M.'s age and maturity, ample flexibility in adhering to the schedule should be afforded to reasonably accommodate M.M.'s preferences in accord with the consent of both parties.
>
> 3. Parenting time for Mr. Morin with M.M. should be gradually restored under the guidance of an experienced family reunification therapist with the active participation of M.M.[,] both parents, and stepparents as directed by the therapist. Participation in therapy is [to] be required with the express goal that M.M. and her father will work on restoring their relationship and resuming [defendant's] parenting time in a timely manner.

A-0147-21

Treatment should include parenting training for both parents with an emphasis on greater emotional awareness and tolerance by [defendant] and more consistent limits and expectations by [plaintiff]. Also, [defendant] should work with the family therapist on better modulation of his anger, improved patience, and more empathetic yet firm parenting responses.

The parents should work with the family therapist in addressing co-parenting issues with the goal of establishing consistent, shared rules and expectations between the two households with mutual reinforcement, replacing the currently contentious, fractured systems.

Restoring contact between M.M. and her father should receive top priority and proceed as swiftly as possible under the guidance and recommendation of the family therapist, with incremental increases in communication (by text, email, etc.) and parenting time as deemed appropriate by the therapist.

4. It is recommended that M.M. continue regularly scheduled individual therapy with Ms. Kardos in tandem with the family reunification therapy. Both parents should have regular contact with Ms. Kardos regarding M.M. progress and treatment goals. Bilateral communication should be restored between M.M.'s individual therapist and the family therapist.

5. Individual therapy is recommended for [defendant] to work on gaining greater insight, self-awareness, and emotional sensitivity as well as learning more effective means of modulating and expressing his anger. Bilateral communication should be established between [defendant's] individual therapist and the family therapist.

A-0147-21

6. The parties must adhere to New Jersey Children's Bill of Rights. This means they shall refrain from disparaging one another in M.M.'s presence. This also means both parents must severely restrict and closely monitor their discussions about the other parent when M.M. is nearby. Neither may coach or coerce M.M. with regard to custody and parenting time arrangements. The parties should caution family members, friends, professionals, and others from making disparaging comments or undermining the other parent's role.

7. The parties are advised to complete online courses (ideally the same one(s)), in co-parenting to guide them in improving their interactions.

. . . .

The parents are advised to work with a co-parenting coach or counselor in addition to, or in conjunction with, the courses recommended above.

Reunification therapy took place from February to July 2021, and was to resume six months later as recommended by the reunification therapist. Defendant's co-equal parenting time did not recommence during that period, leading to further motion practice.

On May 4, 2021, plaintiff filed a motion to: (1) impose child support; (2) require defendant to file a case information statement (CIS); (3) appoint an attorney to represent M.M. pursuant to Rule 5:8A; (4) to schedule a hearing on the best interests of the child; and (5) award plaintiff counsel fees and costs.

In turn, defendant filed a cross-motion to: (1) enforce litigant's rights by compelling plaintiff to follow the recommendations set forth in Dr. Joseph's December 16, 2020 report; (2) enforce the PSA by designating the parties as co-PPRs who shall enjoy true, co-equal, true, shared parenting; (3) schedule a best interests of the child hearing; (4) sanction plaintiff for violating the March 2021 order and the PSA; and (5) award defendant counsel fees and costs.

By the time the motion was heard on August 13, 2021, M.M. was fifteen years old and had not spent any overnights or other parenting time with defendant in approximately seventeen months, except for two brief visits.

Following oral argument, the court issued an August 13, 2021 order with an embedded statement of reasons. The court discussed the prior motion practice and resulting orders. It noted that its custody and co-equal parenting time rulings had been consistent in 2014 and 2016. The court recounted the March 4, 2021 order that incorporated Dr. Joseph's recommendations. Shortly thereafter, the parties filed the cross motions involved in this appeal.

The court recognized that despite the prior orders, defendant had still exercised "virtually no parenting time with [M.M]" and reunification therapy had "stalled." The court noted the parties continued to attack each other based on "the same prior events that had little to do with their present parenting

11

abilities." They once again asked for a best interests plenary hearing. Exhibiting some frustration, the court stated:

> But the court already knows what is in [M.M.'s] best interest: "Gradual restora[tion]" of [d]efendant's parenting time "under the direction of a reunification therapist." Gradual. Not instant. Five or so therapy sessions in as many months is insufficient to restore a parent-child relationship that has been strained for over a year. The goal was "co-equal parenting time" last time the parties appeared, and it remains so today. Thus, in this event, the court reaffirms its prior order(s), rejects the parties' request for a plenary hearing, and denies their additional prayers for relief.

The court then described the reunification therapist's findings. Noting that M.M. had "no desire to work on the relationship" with her father "due to her 'previous experiences' and 'lack of trust[,]'" the reunification therapist concluded that forcing M.M. to attend reunification therapy with defendant "risks damaging rather than healing their relationship permanently." The court concluded:

> [M.M.] needs to address these emotional/psychological issues – either through individual therapy or reunification therapy. But the longer this goes on, the deeper the divide will become and the harder it will be to bridge that divide. This is why the consistent order of this court has been for the parties and the child to work on these issues in a therapeutic environment, all while keeping some form of healthy connection between [M.M.] and her father so the bond does not become irretrievably severed.

The court denied plaintiff's application for child support because the language of the PSA provided for co-equal parenting time and mutually waived child support. Although it recognized that that the parties had "strayed from their co-equal plan over the past year or so[,]" "the court [had] not formally modified it." Moreover, "the parties are in the process of 'restoring' it through 'therapy.'" The court deemed the parenting arrangements then in place to be "temporary . . . [a]nd temporary changes in circumstances, no matter their significance, do not warrant judicial review of child support agreements." Accordingly, the court declined to order defendant to submit a CIS.

The court also denied the mutual request for a best interests plenary hearing. Characterizing plaintiff's demand as "oddly vague," the court determined that a plenary hearing was not necessary given the conclusions of the first and second custody evaluators and the concurrence of the reunification therapist that the co-equal parenting plan remain unchanged. The court stated it was "hardly prepared to subvert the views of professionals for the intuition of a fifteen-year-old child." The court emphasized that "[t]he parties must continue 'reunification therapy' to 'restore' [d]efendant's 'co-equal parenting time.'" The court denied plaintiff's application to appoint counsel to represent M.M. because a plenary hearing would not be conducted.

13

The court denied the parties' cross-applications for an award of counsel fees and costs. The court noted plaintiff's applications for child support and a plenary hearing were unsuccessful. The court found no evidence that defendant had acted in bad faith. As to defendant's request for an award of counsel fees, the count found defendant's application did not comply with Rule 4:42-9(b) because it did not address the factors enumerated in RPC 1.5(a) or include an itemized statement of services rendered.

The court reaffirmed its prior parenting time ruling with the understanding that defendant's parenting time would be gradually restored. It ordered the parties to enroll with a new reunification therapist by September 15, 2021, if the prior reunification therapist declined to be involved. Lastly, the court found defendant had not demonstrated that plaintiff violated Dr. Joseph's recommendations, and declined to sanction plaintiff.

This appeal followed. On appeal, plaintiff argues:

> THE COURT ERRED IN FINDING THAT THE DEFENDANT IS NOT REQUIRED TO PAY CHILD SUPPORT TO THE PLAINTIFF FOR THE BENEFIT OF THEIR MINOR CHILD.
>
> > a. The Minor Child Has a Right to Receive Support from Both of Her Parents.
> >
> > b. There Was a Change of Circumstances Warranting a Recalculation of Child Support at

the Time of the Motion Hearing Because the Child Had No Significant Parenting Time with the Defendant for Over a Year.

c. The Change in Parenting Time is no Longer a Temporary Change and therefore Child Support is Warranted.

In his cross-appeal, defendant argues:

POINT II

THE MOTION JUDGE ERRED BY NOT SCHEDULING A PLENARY HEARING TO ADDRESS AND EFFECTUATE M.M.'S BEST INTEREST AND/OR BY FAILING TO IMMEDIATELY RESTORE PARENTING TIME WITH DEFENDANT.

POINT III

THE MOTION JUDGE ERRED BY DENYING DEFENDANT'S REQUEST FOR COUNSEL FEES AND BY FAILING TO ADDRESS THE FACTORS SET FORTH IN [RULE] 5:3-5(c) REGARDING AN AWARD OF COUNSEL FEES.

I.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Appellate courts "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). Thus, "findings by

15

the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 412-13 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 413 (quoting Rova Farms, 65 N.J. at 484).

"We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

## II.

The Family Part has the statutory authority to modify child-support "from time to time as circumstances may require." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting N.J.S.A. 2A:34-23). "Our courts have interpreted [N.J.S.A. 2A:34-23] to require a party who seeks modification

to prove 'changed circumstances[.]'" Id. at 536 (alteration in original) (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)). Consideration of "changed circumstances" includes changes in the parties' financial circumstances, whether the change is continuing, and whether the parties' agreement "made explicit provision for the change." Ibid. (quoting Lepis, 83 N.J. at 152).

Child support awards are governed by Rule 5:6A, and generally follow the child support guidelines (guidelines), which "may be modified or disregarded by the court only where good cause is shown." R. 5:6A.

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 326 (quoting Jacoby, 427 N.J. Super. at 116). We are not bound, however, by the trial judge's "'interpretation of the law' and do not defer to legal consequences drawn from established facts." Jacoby, 427 N.J. Super. at 117 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The annual number of overnight parenting times is a factor under the child support guidelines shared parenting schedules. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendices IX-A(14)(c)(2) and IX-D to R. 5:6A, www.gannlaw.com (2022). The shared parenting schedules apply when the children spend at least twenty-eight percent of the overnights with the PAR. Appendix IX-A(14)(c)(2) to Rule 5:6A. Here, during the thirteen months leading up to the filing of plaintiff's motion, M.M. had been spending every overnight with plaintiff. Therefore, the shared parenting schedule did not apply. Appendix IX-A(14)(c)(2) to Rule 5:6A.

The shared parenting schedules recognize that increasing the number of overnights that the children spend with the PAR increases the PAR's "variable costs (e.g., food, transportation, and some entertainment)" incurred by the PAR. Appendix IX-A(13)(a)(2) to Rule 5:6A. In turn, it decreases the variable costs incurred by the PPR. The converse also applies. Reducing the number of overnights that the children spend with the PAR reduces the PAR's variable costs and increases the PPR's variable costs.

The guidelines assume that thirty-eight percent of the spending on children is for fixed expenses, thirty-seven percent is for variable costs, and twenty-five percent is for controlled expenses. Appendix IX-A(14)(g)(1) to

18

Rule 5:6A; accord Jacoby, 427 N.J. Super. at 119. Variable costs "are apportioned based on each parent's percentage of overnights with child." Appendix IX-A(14)(g)(3) to Rule 5:6A. Because M.M. was spending every night with plaintiff and had almost no other parenting time with defendant, defendant was not incurring any variable costs.

Our case law is clear. "Each parent has a responsibility to share the costs of providing for the child while she remains unemancipated." Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993). Defendant's obligation to "proper[ly] support" his unemancipated daughter "to the extent he is financially able" continues, "even though [if there is currently] no relationship between them." J.R. v. L.R., 386 N.J. Super. 475, 484 (App. Div. 2006); see also Gormley v. Gormley, 462 N.J. Super. 433, 451 (App. Div. 2019) (stating that "any injustice caused by the failure of a party's relationship with his or her child is not remedied by a reduction in child support"); L.V. v. R.S., 347 N.J. Super. 33, 43 (App. Div. 2002) ("an ungrateful child does not relieve a parent of the duty of support"). To that end, defendant's "continuing obligation to support the child must be based upon an evaluation of the child's needs and interests and not upon the conduct of the plaintiff." Martinetti, 261 N.J. Super. at 512. In any event, the trial court did not find that plaintiff was alienating M.M.'s affections

19

towards defendant or otherwise intentionally interfering with defendant's parenting time.

"[E]nforcing the parental duty to support children is 'an inherent part of the "best interests of the child" rubric which underlies our family courts.'" Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010) (quoting Monmouth Cnty. Div. of Soc. Servs. v. G.D.M., 308 N.J. Super. 83, 88 (Ch. Div. 1997)). Consequently, "a parent is obliged to contribute to the basic needs of an unemancipated child to the extent of the parent's financial ability[.]" Ibid. (alteration in original) (quoting Martinetti, 261 N.J. Super. at 513). Thus, "children are entitled to be supported at least according to the standard of living to which they had grown accustomed prior to the separation of their parents[.]" Ibid. (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 546 (App. Div. 1992)). Without child support from defendant, attaining those laudable goals is clearly thwarted.

We recognize that parents may, as part of a PSA, agree to allocate the financial obligation for child support, and deviate from the child support guidelines, provided the terms of the agreement are fair and equitable, O.P. v. L.G.-P., 440 N.J. Super. 146, 155-56 (App. Div. 2015), and the interests of the child will not be prejudiced, Ordukaya v. Brown, 357 N.J. Super. 231, 239-41

(App. Div. 2003). Stated another way, parents may agree to apportion the responsibility to support their child but may not bargain away the child's right to support. Blum v. Adler, 279 N.J. Super. 1, 4 (App. Div. 1994).

Like all child support orders, an agreement allocating the financial responsibility to support the parties' child, which is incorporated into a divorce judgment, is not immutable; it may be modified upon a showing of substantially changed circumstances and related showing of need. Lepis, 83 N.J. at 146, 157; Jacoby, 427 N.J. Super. at 116. A significant change in custody or parenting time constitutes a change in circumstances warranting a modification in child support, Winterberg v. Lupo, 300 N.J. Super. 125, 133 (App. Div. 1997); Ohlhoff v. Ohlhoff, 246 N.J. Super. 1, 6 (App. Div. 1991) (superseded by statute on other grounds), provided the change is not temporary and "some time" has elapsed before the application to modify the responsibility to support is filed, Koelble v. Koelble, 261 N.J. Super. 190, 196 (App. Div. 1991) (quoting Ohlhoff, 246 N.J. Super. at 7).

Applying these principles to the facts in this case, we find that an ongoing substantial change in circumstances warranting a recalculation of child support under the guidelines had occurred. Instead of the true, co-equal overnight parenting time contemplated by the PSA, M.M. was no longer spending

overnights at defendant's residence. Plaintiff did not move for child support at the inception of the change. Instead, she waited thirteen months after overnight parenting time ended before filing her motion. We do not view this change to be temporary. No overnight parenting time had occurred for over a year, which we find was a "reasonable period" under the circumstances. See Appendix IX-A(13)(d) to Rule 5:6A (explaining that non-compliance with a parenting plan "over a reasonable period" is a basis for adjusting child support to reflect the level of parenting time "that is being exercised").

In the seventeen months preceding the entry of the August 13, 2021 order, M.M. had not spent any overnights or other parenting time with defendant, except for two brief visits. The trial court recognized that "the longer this goes on, the deeper the divide will become and the harder it will be to bridge that divide." Indeed, the bond between defendant and M.M. could "become irretrievably severed." The goal of returning to overnight parenting time, much less co-equal parenting time, remained uncertain and without any discernable timetable. At oral argument before this court, the parties confirmed that the absence of overnight parenting time continues. Thus, defendant has not had any overnight parenting time with M.M. for approximately twenty-nine months.

A-0147-21

This ongoing, fundamental change in parenting time, with no realistic expectation of reverting to co-equal parenting time in sight, constituted a substantial change in circumstances warranting the imposition of a child support order under the guidelines. We reach this conclusion because the shared parenting schedule no longer applied, the respective child support obligations of the parties were no longer equal, and the sole parenting schedules now applied. We reverse the denial of plaintiff's motion to impose a child support obligation on defendant and remand for the trial court to calculate the amount of the award under the sole parenting schedules based on the information disclosed in current CISs and exhibits, including their most recent tax returns, in the form set forth in Appendix V of the rules. R. 5:5-4(a)(4). Any resulting child support obligation shall be retroactive to May 4, 2021, the date plaintiff filed her motion. Absent such relief, defendant, who incurs no variable costs, receives an unjust windfall at the expense of plaintiff, who shouldered all the variable costs.

By so ruling, defendant is not unfairly prejudiced. Child support remains modifiable based upon a showing of substantially changed circumstances. Lepis, 83 N.J. at 157. In the event reunification therapy is successful in the future and defendant regains overnight parenting time on at least twenty-eight

A-0147-21

percent of the overnights, he may seek a modification of child support under the guideline's shared parenting schedules.

### III.

In his cross-appeal, defendant argues the trial court erred by not conducting a best interest plenary hearing. Given the court's familiarity with the prior motion practice, the evaluations performed, and the recommendations of the evaluators, the court did not misapply its discretion in declining to conduct a plenary hearing. While the parties advised this court during oral argument that a different judge recently awarded defendant non-overnight parenting time and scheduled a plenary hearing, the facts before the motion judge did not warrant compelling M.M. to participate in overnight parenting time, much less true, co-equal parenting time.

We nevertheless recognize that substantial time has elapsed while this appeal was pending. By the time the plenary hearing takes place, defendant will presumably have exercised the recently ordered parenting time with M.M. The facts developed during the plenary hearing will govern defendant's future parenting time. If overnight parenting time is awarded to defendant, the trial court shall consider the number of overnights defendant receives when calculating child support.

A-0147-21

## IV.

Defendant contends the court erred by denying his counsel fee application and by failing to address the factors set forth in Rule 5:3-5(c). We disagree.

Notably, the PSA and prior orders provided that each party was responsible for their own counsel fees. Defendant was only partially successful on his cross-motion. Moreover, did not find that plaintiff violated Dr. Joseph's recommendations. The court likewise declined to sanction plaintiff. While the court granted defendant's request to enforce the co-equal parenting time arrangement contemplated by the PSA and March 4, 2021 order, restoring that arrangement would be gradual and under the direction of the reunification therapist.

More fundamentally, as noted by the trial court, defendant's counsel fee application was fatally deficient. Contrary to the mandatory requirements of Rule 4:42-9(b), defendant's fee application was not "supported by an affidavit, or certification [] of services" addressing "the factors enumerated [in] RPC 1.5(a)." The filing of an affidavit meeting the requirements of Rule 4:42-9 "is ordinarily a prerequisite to an allowance under the rule." Pressler & Verniero, cmt. 3.1 on R. 4:42-9(b). Nor had defendant submitted a current CIS. Without this information, the trial court was unable to address the factors enumerated in

Rule 5:3-5(c).  Under these circumstances, defendant can hardly complain the court failed to address those factors when his own conduct precluded such consideration.  We discern no abuse of discretion or error.

Affirmed in part, reversed in part, and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0147-21